### PEOPLE *v.* GRANT.

1. MUNICIPAL CORPORATIONS—LICENSES—ORDINANCES—TRANSIENT TRADESMEN—CHARTER—REVENUE—STATUTES.

   A city of the fourth class, under chapter 88, 1 Comp. Laws, may impose a license fee on transient tradesmen, for purposes of revenue.

2. SAME—LICENSES—LEGISLATIVE FUNCTIONS—STATUTES.

   License fees, under 1 Comp. Laws, § 3108, must not be so heavy as to be prohibitory, and their reasonableness is a question for judicial determination.

3. SAME—CHARTER—ORDINANCE OF CITY OF PETOSKEY.

   An ordinance imposing license fees for revenue on transient traders of $2 per day for each day less than a week, $10 for a week, $25 for a month, and $50 for three months, is not oppressive, unjust, or unreasonable.

Error to Emmet; Shepherd, J. Submitted February 15, 1909. (Docket No. 151.) Decided May 26, 1909.

Robert Grant was convicted of doing business as a transient tradesman without having paid a license fee, and sentenced to pay a fine of $50. Affirmed.

*M. F. Guinon*, for appellant.

*B. H. Halstead*, City Attorney, for the people.

HOOKER, J.   Grant was prosecuted as a "transient tradesman" in the city of Petoskey, under an ordinance which provided:

"SECTION 1.   The words 'transient tradesmen,' for the purpose of this ordinance, shall be construed to mean and include all persons, both principals and agents, who engage in temporary or transient business in this city, or in traveling from place to place therein, selling goods, wares and merchandise, and who, for the purpose of carrying on such business, hire, lease or occupy any building or structure for the exhibition or sale of such goods, wares and merchandise.   And no such transient tradesman shall be exempt from the provisions of this ordinance by reason of associating himself temporarily with any local dealer, trader or auctioneer, or by conducting such temporary or transient business in connection with or as a part of the business of or in the name of any local dealer, trader or auctioneer.   *   *   *

"SEC. 3.   Every transient tradesman before engaging in business, or before advertising or exposing his wares, goods or merchandise for sale, shall make affidavit, procure a transient tradesman's license from the common council of the city upon application therefor, the same to be issued by the city clerk and he shall pay the city treasurer a license fee depending upon the time he proposes to engage in such business, to be stated in his application: Fifty dollars for three months, twenty-five dollars for one month, ten dollars for one week, and two dollars for each day less than one week.   The time for which said license is to run and the date of its expiration shall be specified therein.   All such licenses shall at the latest expire on the first Monday in June, following their issue; a license shall not give authority to more than one person to sell goods; each license shall state that it is not assignable nor transferable, and that it may be revoked by the common council at any time upon return to the licensee of the unearned license fee.   *   *   *

"SEC. 7.   Every person who shall in any manner engage in doing or transacting the business of a transient tradesman in selling goods, wares or merchandise without first having procured and paid for a license, as required by this ordinance, or who shall continue such business after the time limit in said license obtained therefor shall have expired."

The facts are not in dispute. The defendant is a nonresident of said city and of this State, and was a transient tradesman within the terms of said ordinance. He had been in the habit for several years of engaging in such business in Petoskey about July 15th and continuing until about October 1st. He did so in 1907, and he procured no license. His stock was from $2,000 to $5,000 in value, and the rate of taxation for that year was $2.05 upon each $100 valuation. He was sentenced to pay a fine of $50, and to be imprisoned in the county jail until paid, not exceeding 90 days, and has appealed.

Counsel for respondent contend that:

(1) The charter, *i. e.*, the general act for the incorporation of cities, has not conferred authority to pass this ordinance.

(2) The ordinance should be declared void because oppressive and unjust.

(3) It is unreasonable and void for that reason.

Petoskey is a city of the fourth class. The power to license conferred upon cities is found in 1 Comp. Laws, § 3107. Under the various subdivisions of this section, cities are given authority to license and regulate billiard tables, etc. (subdivision 5), auctioneers, etc. (subdivision 10), hawkers and peddlers (subdivision 11), wharfboats (subdivision 12), ferries (subdivision 13), taverns, saloons, etc. (subdivision 14), vehicles used for hire, etc. (subdivision 15), toll bridge, etc. (subdivision 16), drays, hacks, etc. (subdivision 29), dogs (subdivision 32). Subdivision 39, under which the city claims to have acted in passing the ordinance in question, provides that:

"The council may also license transient traders, which shall be held to include all persons who may engage in the business of selling goods or merchandise after the commencement of the fiscal year, and the license fee in such cases may be apportioned with relation to the part of the fiscal year which has expired, but such traders, if they continue in the same business, shall not be required to take out a second license after the commencement of the next fiscal year: *Provided*, Such goods or merchandise have been assessed for taxes for said fiscal year."

"(3108) SEC. 2. The council may prescribe the terms and conditions upon which licenses may be granted and may exact and require payment of such reasonable sum for any license as they may deem proper.  *  *  *

"(3109) No license shall be granted for any term beyond the first Monday in June next thereafter, nor shall any license be transferable, and the council may provide for punishment by fine or imprisonment, or both, of any person, who, without license, shall exercise any occupation or trade, or do anything for or in respect to which any license shall be required by any ordinance or regulation of the council.

"(3110) All sums received for licenses granted for any purpose by the city or under its authority, shall be paid into the city treasury to the credit of the contingent fund."

Our attention is called to the fact that, whereas, every other subdivision above cited contains the words "license and regulate," the word "regulate" is not found in subdivision 39. We have held that license fees may be imposed by cities for the purpose of regulation or for revenue. *Wells* v. *Torrey*, 144 Mich. 694 (108 N. W. 423). When for regulation and not for revenue, the fee should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business covered by it (2 Cooley on Taxation [3d Ed.], p. 1141); but if for revenue the extent of the tax must be understood to be left to the judgment and discretion of the municipal government, to be determined in the usual mode in which "its legislative authority is exercised; but the grant of authority to impose fees for the purpose of revenue would not warrant their being made so heavy as to be prohibitory, thereby defeating the purpose" (2 Cooley on Taxation [3d Ed.], p. 1140). It is true that many cases hold that when authority is given to a city to grant licenses for revenue, or for regulation and revenue, the courts will not inquire into the reasonableness of the amount; but, in view of 1 Comp. Laws, § 3108, quoted above, we must hold that cities are restricted to reasonable license fees, whether imposed for regulation or revenue, and that involves a judicial determination of the question of reasonableness if a contro-

versy arises.  We are of the opinion that the 39th subdivision referred to authorizes the requirement of licenses for the purpose of revenue.  Not only is the absence of the word "regulate" significant, but the nature of the business and the provisions as to other taxation clearly indicate it.

The fee imposed cannot be said to be unreasonable.  It was as follows: Two dollars per day for each day less than one week; ten dollars for one week; twenty-five dollars for one month; fifty dollars for three months; two hundred dollars for one year.  Three dollars for one day was held a reasonable fee for hawking and peddling.  *City of Alma* v. *Clow*, 146 Mich. 443 (109 N. W. 853).  Three dollars per day and $15 per year for selling merchandise was held reasonable in *People* v. *Russell*, 49 Mich. 617 (14 N. W. 568, 43 Am. Rep. 478).  Ten dollars for one week and $50 per year for hawking and peddling spices, teas, coffee, baking powder, extracts, and essences was held valid in *City of Muskegon* v. *Zeeryp*, 134 Mich. 181 (96 N. W. 502).  Five dollars a week for hawking and peddling was held valid in *People* v. *Baker*, 115 Mich. 199 (73 N. W. 115).  See, also, *City of Grand Rapids* v. *Norman*, 110 Mich. 544 (68 N. W. 269); *People* v. *Smith*, 147 Mich. 391 (110 N. W. 1102).

We hold therefore that the license was lawfully imposed for revenue, that it was neither oppressive nor unjust, and that it was not shown to be unreasonable.

The conviction is affirmed.

OSTRANDER, MOORE, MCALVAY, and BROOKE, JJ., concurred.