Argued July 27, decided August 17, 1909.

## STATE v. MILLER.

[108 Pac. 519.]

INDICTMENT AND INFORMATION—FORM.

1. An indictment, in general, must contain a specific description of the offense, and not merely the statement of a conclusion of law.

INDICTMENT AND INFORMATION—STATUTORY OFFENSE.

· 2. Where a statute creates and defines a new offense, it is sufficient for an indictment thereunder to state the offense in the language of the statute.

INDICTMENT AND INFORMATION—LANGUAGE OF STATUTE—"ITINERANT VENDER."

3. Laws 1905, p. 222, prohibiting any itinerant vender or hawker of any drug, nostrum, etc., for the treatment of any disease or injury, to offer the

same for sale without securing a license from the board of pharmacy, as amended by Laws 1907, p. 281, defining the term "itinerant vender" to include all persons who carry on the business described, by passing from house to house or by haranguing the people on public streets or in public places, or use the customary devices for attracting crowds, and therewith recommending their wares and offering them for sale. *Held*, that an information in the language of the statute charging that defendant, while being a traveling vender of a drug, offered to sell the same without securing a license, etc., was not demurrable as alleging a mere conclusion of law concerning defendant's occupation; defendant being required to take notice that it was intended to charge that he was an "itinerant vender" as defined in the amendment.

STATUTES—TITLE—PLURALITY OF SUBJECTS.

4. Section 3806, B. & C. Comp., provides for examination by the board of pharmacy of applicants to determine their right to registration as pharmacists, and Section 3812 regulates the sale of poisons; both sections being parts of Act February 21, 1891 (Laws 1891, p. 157), entitled an Act "to regulate the practice of pharmacy and the sale of poisons in the State of Oregon." *Held*, that Act February 21, 1905 (Laws 1905, p. 222), entitled "An Act to amend Sections 3806, 3812, of Bellinger and Cotton's Annotated Codes and Statutes of Oregon, and to provide for the licensing of itinerant venders of all drugs, nostrums, ointments, and providing a penalty for violation thereof," did not violate Section 20, Article IV, Constitution of Oregon, requiring that every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title.

CONSTITUTIONAL LAW—HAWKERS AND PEDDLERS—REGULATION—POLICE
POWER—EQUALITY—CLASSIFICATION.

5. Laws 1905, p. 222, requiring itinerant venders of drugs, etc., to procure a license from the board of pharmacy, as amended by Laws 1907, p. 281, and prescribing a penalty for the sale of drugs by an itinerant vender without such license, was a proper exercise of police power, and was not in violation of Section 20, Article I, Constitution of Oregon, declaring that no law shall grant any class special privileges or immunities, in that it did not apply equally to all citizens in the State, since it applied equally to all itinerant venders of drugs which was proper basis of legislative classification.

CONSTITUTIONAL LAW—CLASS LEGISLATION—CLASSIFICATION.

6. The legislature, in passing laws regulating hawkers and peddlers, may divide them into different classes, provided the classification is reasonable and the regulatory provision applies equally to all engaged in the same class.

From Grant: GEORGE E. DAVIS, Judge.

Statement by MR. JUSTICE SLATER.

The defendant, J. H. Miller, was charged upon an information filed in the circuit court for Grant County with having violated section three of the act of February 21, 1905 (Laws 1905, p. 223), requiring any itinerant vender or hawker of any drug, nostrum, ointment, or application of any kind for the treatment of any disease or injury, to procure a license therefor from the Board of Pharmacy of this State before offering for sale any

such drug, etc. The defendant demurred to the information. This being overruled, he was tried and convicted of the charge, and has appealed from the judgment entered against him.                                          AFFIRMED.

For appellant there was a brief over the names of *Mr. James K. Weatherford* and *Mr. Erret Hicks*, with an oral argument by *Mr. Weatherford.*

For the State there was a brief with oral arguments by *Mr. Andrew M. Crawford*, Attorney General, and *Mr. John W. McCulloch*, District Attorney.

MR. JUSTICE SLATER delivered the opinion of the court.

1. The first objection raised by the demurrer to the sufficiency of the information is that it does not state the facts constituting an itinerant vender, or hawker, but pleads a conclusion of law. The allegation, so far as material, is that the defendant, "while being a traveling vender of a drug, * * did offer for sale and sell to Robert Stockdale, a drug, etc." It is contended that the phrase "while being a traveling vender" is a conclusion of law, and does not state a fact. The general rule of pleading is that the indictment must contain a specific description of the offense, and it is not enough to state a mere conclusion of law. Wharton, Crim. Pl. & Pr. § 154.

2. When, however, a statute creates and defines a new offense, on the principles of common-law pleading, it may be said that it is sufficient to frame the indictment in the words of the statute, in all cases where the statute so far individuates the offense that the accused has proper notice from the mere adoption of the statutory terms what the offense he is to be tried for really is. Wharton, Crim. Pl. & Pr. § 220.

3. By an amendatory act of February 25, 1907 (Laws 1907, p. 281), the meaning of the term "itinerant vender," as used in this act, is defined to include "all persons who carry on the business above described, by passing from

house to house, or by haranguing people on the public street or in public places, or use the customary devices for attracting crowds and therewith recommending their wares, and offering them for sale." By referring to the law on which the charge was brought, and of which the defendant is bound to take notice, he would be informed as to what facts constituted an "itinerant vender." The information, being in the language of the statute creating the offense, is sufficient. *State v. Carr,* 6 Or. 133; *State v. Packard,* 4 Or. 157; *State v. Ah Sam,* 14 Or. 347 (13 Pac. 303); *State v. Lee,* 17 Or. 488 (21 Pac. 455); *State v. Shaw,* 22 Or. 287 (29 Pac. 1028; *State v. Thompson,* 28 Or. 296 (42 Pac. 1002). See, also, *State v. Foster,* 21 R. I. 251 (43 Atl. 66); *State v. Duncan,* 9 Port. (Ala.) 260; *Sterne v. State,* 20 Ala. 43.

4. It is next urged that the act of February 21, 1905 ( Laws 1905, p. 222), creating the crime charged, is void, because it contravenes in two particulars Section 20, Article IV, Constitution of Oregon, which requires that "every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title." The title of the act in question is as follows: "To amend Sections 3806 and 3812 of Bellinger and Cotton's Annotated Codes and Statutes of Oregon, and to provide for the licensing of itinerant venders of drugs, nostrums, ointments, and providing a penalty for violations thereof." It will be seen that the subject matter of that part of the act now in controversy is sufficiently stated in the title of the act, and it must be conceded that there is but one question to determine, viz: Does the act embrace more than one subject, or are there two subjects embraced therein which are not germane each to the other? Section 3806 of the Code pertains to examination by the Board of Pharmacy to determine the qualification of applicants for registration as pharmacists, and the issuance of certificates of registration, and Section 3812 to the regulation of the sale of poisons.

Both of these sections are parts of the act of February 21, 1891 (Laws 1891, p. 157), the title of which is: "To regulate the practice of pharmacy and the sale of poisons in the State of Oregon." In this country the business of a "pharmacist" and a "druggist" is one, and the person who prepares and compounds medicines also sells them, so that, in popular speech, the two are used interchangeably as practically synonymous, and it was with the regulation of pharmacy as an occupation, or business, in relation to the public, not only in compounding, but in selling drugs and medicines, that the act of 1891 dealt; and hence to regulate and prohibit the sale of drugs or medicines by others than druggists or pharmacists would be germane to the title and subject of the act. *State* v. *Donaldson*, 41 Minn. 74 (42 N. W. 781). The first section of the act of 1891 makes it unlawful for any person not a registered pharmacist to conduct any pharmacy, drug store, apothecary shop, or store for the purpose of retailing as well as compounding medicines or poisons. So, then, the independent title to the amendatory act of 1905, "to provide for the licensing of itinerant venders of drugs, nostrums, ointments, and providing a penalty for violations thereof," does not introduce a new or different subject of legislation, but is further legislation upon the same subject. The act therefore, in that respect, is not in contravention of that provision of the constitution.

5. It is also suggested in the brief of defendant's counsel, but not elucidated by argument, that such law violates Section 20, Article I, Constitution of Oregon, which provides that "no law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." The recent decision of this court in *State* v. *Wright*, 53 Or. 344 (100 Pac. 296) is cited, and solely relied upon by the defendant to sustain the suggestion made; but the present case clearly comes within the exception to

the general rules there announced. It was there held that the peddlers' act of 1905 (Laws 1905, p. 339), requiring a license to peddle stoves, ranges, wagons, etc., operates unequally in that it requires one peddling two or three harmless and useful articles to pay a fee for the privilege, and indirectly permits peddlers of other articles, not named therein, whether harmful or not, to do so without restriction or limitation, and is void because it is arbitrary and class legislation; but it was also held that the State may impose a tax or require a license from persons engaged in certain callings or trades, without being bound to include all persons or all property that may be legitimately taxed for governmental purposes, but the classification must be on some reasonable basis, and the law, when enacted, must apply alike to all engaged in the business or occupation. The court was unable to discover in that case any reasonable basis for the distinction undertaken to be drawn by the legislature between the right to peddle stoves, buggies, or fanning mills (which possessed no inherent danger to public health or morals, but were prohibited), and patent medicines, dynamite, and poisons (which are inherently dangerous, but the sale thereof impliedly permitted by peddlers); and hence it was termed an "arbitrary distinction." Mr. Justice BEAN, who delivered the opinion, was careful to state at the very threshold of the discussion of the question that it was important to note that the case he was considering did not involve the right of the State to regulate the sale of articles which are, or may be, injurious to the public health or morals.

6. It was expressly conceded that the legislature may in such laws divide peddlers into different classes; but it was held that the classification must be on some reasonable basis, and the law when enacted must apply alike to all engaged in the business or occupation. Reasonable regulation by law of the sale of drugs, medicines, and poisons by retailers has been uniformly upheld as a valid

exercise of police power. 14 Cyc. 1079. The object of such laws is the protection of public health, *Commonwealth* v. *Zacharias*, 181 Pa. 126 (37 Atl. 185) ; and statutes requiring itinerant venders of drugs, who publicly profess to cure disease thereby, to pay a license fee, have been upheld upon the same grounds. 14 Cyc. 1083; *State* v. *Gouss*, 85 Iowa, 21 (51 N. W. 1147). There is certainly a reasonable distinction to be made between the sale of stoves ranges, wagons, carriages, fanning mills, on the one hand, and drugs, nostrums, ointments and applications for the treatment of diseases and injuries. The former are harmless and have no hidden power liable to injure public health, while the composition of the latter is generally secret, and frequently contains deleterious elements unknown to the purchasers. The distinction arises from the inherent quality of the articles vended, and not from the character of the persons vending them.

We are of the opinion that the classification made by the law is reasonable, and within the power of the legislature to make. The law is of uniform operation. It applies alike to all such itinerant venders, and its privileges and immunities are open to all persons, upon the same terms. So far as it relates to the objections suggested and considered herein, we are of the opinion that the act is a valid exercise of legislative power.

The judgment is affirmed.                    AFFIRMED.