Argued July 1, reversed and decree entered July. 20, 1920.

## ANDERSON v. FARR.

(191 Pac. 346.)

**Constitutional Law—Hawkers and Peddlers—Statute Requiring License for Selling of Medicines Valid.**

1. General Laws of 1913, Chapter 164, Section 19, regulating the practice of pharmacy, and the possession and disposal of poisons and other drugs, and requiring itinerant peddlers selling the same to pay a license fee of $200, does not contravene Article I, Section 20, of this Constitution relating to special privileges or immunities, or Amendment 14, Section 1, of the U. S. Constitution.

**Statutes—Statute as to Pharmacy Held to Embrace Only One Subject.**

2. General Laws of 1913, Chapter 164, regulating the practice of pharmacy, and requiring itinerant dealers to pay a license, does not embrace more than one subject.

**Hawkers and Peddlers—Itinerant Venders of Medicines in Original Packages Need not Pay Licenses.**

3. Itinerant venders or peddlers, selling proprietary or patent medicines in the original packages, are not required to pay a

license under General Laws of 1913, Chapter 164, Section 19, being expressly excepted by Section 12.

[As to statutory regulation of itinerant physicians or venders of drugs, see notes in 70 **Ann. Cas.** 401; **Ann. Cas.** 1913D, 1242.]

From Multnomah: William N. Gatens, Judge.

In Banc.

This is a suit brought by plaintiffs, who are itinerant venders of certain patent or proprietary medicines, which may be described generally as Watkins Family Remedies, to enjoin their arrest and prosecution under Section 19, Chapter 164, General Laws of 1913.

The complaint alleges, in substance: That the J. R. Watkins Medical Company of the State of Minnesota, manufactures these medicines and certain extracts for domestic use; that the plaintiffs, by contract with said company, conduct the business of selling said medicines and extracts each in his own particular locality, selling the same to the general public in original packages and under the full label and not otherwise, and that each conducts his business as dealer in such remedies and extracts from a wagon or automobile drawn or propelled from place to place, within the district or locality in the State of Oregon, described in the contract with the Watkins Medical Company, under which he operates, and each maintains a home station, or storehouse, where he keeps on hand a surplus stock of said medicines and extracts such as their business may require; that sales are made by each of the plaintiffs within his respective district or territory from said wagon, automobile, or storehouse, directly to the consumer, or upon orders as the same may be received; that each of the plaintiffs is a citizen and resident taxpayer of the State of Oregon, and not a transient traveling

or itinerant peddler, or vender of fake medicines, drugs, or nostrums.

Then follow allegations showing that each of the plaintiffs has gone to great trouble and expense in building up a business, that each has his regular customers, upon whom he calls at regular intervals, supplying their requirements from his stock of medicines, remedies, and extracts; that the business so acquired is of great value to the plaintiffs; that there is a general demand throughout the state for such remedies, etc., which are valuable, and that plaintiffs have not been guilty of any fraud, deceit, or misrepresentation in the sale thereof, nor charged therewith.

That plaintiffs' business brings them into competition with city and country druggists, and drugstores, who handle and deal in the same, and other patent and proprietary medicines, but who maintain an established and fixed place of business, and who, for the purpose of crushing out competition, have invoked and are now invoking the use of Section 19, Chapter 164, General Laws of 1913, entitled "An act to regulate the practice of pharmacy and the possession and disposal of poisons and other drugs," etc.

That the State Pharmacy Board has caused defendants Scott and Jefferies to be appointed as special agents and representatives of the board, with the power of deputy sheriffs, and has sent them out over the various counties where plaintiffs transact business to procure evidence against plaintiffs of sales made by them from these wagons and automobiles, and to stop plaintiffs upon the highways and, by feigning sickness, seek to purchase some of said remedies, with the intent of arresting plaintiffs under the provisions of said act.

That each of plaintiffs buys said medicines at wholesale from the Watkins Medical Company, and

sells at retail, and all are engaged in said business wholly as a means of livelihood for themselves and their families, and that, being general dealers in such commodities, they have not taken out or paid for a license under Section 19 aforesaid.

That the pharmacy board, Walter H. Evans, district attorney, and defendants Scott and Jefferies have caused the arrest of a number of these plaintiffs, on a charge of violation of Section 19 aforesaid, and have caused them to be fined a minimum fine of $200, which cases are now on appeal and undetermined. There are allegations showing irreparable damage to plaintiffs by reason of such arrests, and further allegations showing that defendants threaten and intend to continue such arrests and prosecutions.

It is alleged that Section 19 of Chapter 164 aforesaid has no application to dealers in such commodities as plaintiffs handle, and that plaintiffs are specifically exempted from its operation by Section 12 of the same act. It is further alleged that the act is unconstitutional and void:

(1) Because it undertakes, by Section 12, to exempt from its terms general dealers in such commodities as are handled by plaintiffs, while pretending by Section 19 to exact a license fee of $200 from each of the plaintiffs for dealing in the same commodities, thereby placing the act in conflict with Section 20 of Article I of the Constitution, which provides:

"No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

(2) That the act is in contravention of Section 1 of Article XIV of the Constitution of the United States.

(3) That the passage of said act is not within the police power of the legislature of the State of Oregon, as its effect is not to protect the public health or morals, or the peace, quiet, and good order of society; nor is it for the public welfare.

(4) That it is void for the reason that the license fee of $200 per annum, exacted by Section 19, is unreasonable, excessive, and oppressive, and renders it impossible for plaintiffs to continue their business.

The prayer is, that the court declare plaintiffs exempt from the provisions of said act, that the act be declared unconstitutional because in contravention of the Constitution of the United States and of the State of Oregon, and that further prosecutions be enjoined, and for general relief.

A general demurrer having been overruled, defendants answered, putting in issue the material parts of the complaint, alleging that at all the dates mentioned plaintiffs were itinerant and traveling hawker venders of drugs, nostrums, applications, and ointments for the professed cure of human ailments, and were offering the same for sale in the State of Oregon, and carrying on said business by passing from house to house, haranguing people upon the public streets and highways and in public places, and using the customary devices for attracting crowds, and thereby disposing of their wares.

That plaintiffs had not taken out or paid for the license required by Section 19. (The intent to prosecute them for failure to take out the license and selling their remedies without the same was admitted.)

A reply having put the case at issue, the court made findings for the defendants, and rendered a decree dismissing the suit, from which decree plaintiffs appeal.     REVERSED AND DECREE ENTERED.

For appellants there was a brief and an oral argument by *Mr. B. A. Kliks.*

For respondents there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, and *Mr. George Mowry,* Deputy District Attorney, with an oral argument by *Mr. Mowry.*

McBRIDE, C. J.—Before proceeding to discuss the principal and most difficult question raised on this appeal, we will dispose of those questions which we deem easy of solution.

1. The objection that the act in question contravenes Article I, Section 20, of our state Constitution has been decided adversely to plaintiffs' contention in *State* v. *Miller,* 54 Or. 381 (103 Pac. 519), and need not be further considered. We are satisfied that both by plaintiffs' own pleadings and the testimony, plaintiffs are "itinerant venders" of drugs, etc., within the meaning of the law.

2. The claim that the act in question embraces more than one subject is also negatived by the same decision.

Neither does the act violate Section 1 of the Fourteenth Amendment to the Constitution of the United States: *Baccus* v. *Louisiana,* 232 U. S. 337 (58 L. Ed. 627, 34 Sup. Ct. Rep. 439, see, also, Rose's U. S. Notes); *Ex parte Gilstrap,* 171 Cal. 108 (152 Pac. 42, Ann. Cas. 1917A, 1086).

3. In view of our construction of the act itself, it is unnecessary to consider its constitutionality in other respects, for, conceding without deciding that it is perfect constitutionally in all respects, we are of the opinion that plaintiffs are expressly excepted from its operation by Section 12 thereof.

It seems to be clearly shown by the testimony that plaintiffs are engaged in the general business of selling and dealing in proprietary or patent medicines in the original packages, properly labeled and purchased from manufacturers outside the state. The fact that they are also selling extracts, soaps, and perhaps other articles cuts no figure in the case.

Section 19 of the act, as it stood at the date of filing this complaint, is as follows:

"Any itinerant or traveling vender or hawker of any drug, nostrum, ointment or application of any kind for the treatment of any disease or injury, before offering any such drug, nostrum, ointment or application for sale shall pay to the treasurer of the Oregon Board of Pharmacy an annual fee of two hundred dollars ($200) upon the receipt of which the secretary of the board shall issue a license for one year from the date of said payment; one half of all such license fees shall be devoted to defraying the expenses of the board and the remainder shall be paid as it is received by the treasurer of the Oregon Board of Pharmacy into the state school fund. Itinerant venders under the meaning of this act shall include all persons who carry on the business above described by passing from house to house, or by haranguing the people on the public streets or in public places, or use the various customary devices for attracting crowds and therewith recommending their wares and offering them for sale. Any violation of this section shall be a misdemeanor and any person shall upon conviction thereof pay a fine of not less than two hundred dollars ($200) nor more than three hundred dollars ($300), and in default of such payment shall be imprisoned in the county jail for the period of one day for each two dollars ($2.00) of such fine. In case of prosecution under this section it need not be proven that the defendant has not a license, but the fact that he has a license may be a matter of defense; *provided, however,* that nothing in this act shall be construed to prevent the collection

of any tax or license that may be imposed by any county or municipal authority.''

If this section stood alone without qualification, its provisions would amply justify the prosecutions instituted and threatened by the state; but, perhaps unfortunately for the public, it is qualified by Section 12, which, among other provisions, contains the following:

''Nothing in this act shall apply to or interfere with any practitioner of medicine or dentistry who is duly registered as such by their respective State Board of Examiners of this state, with supplying his own patients, as their physician or dentist and by them employed as such, with such remedies as he may desire, and who does not keep a pharmacy, open shop or drugstore, advertised or otherwise, for the retailing of medicines or poisons; nor does this act apply to the exclusively wholesale business of any dealer, nor to the manufacture or sale of proprietary medicines or patent medicines, or to the sale of any household remedies and medicines, by general dealers not druggists, in the original packages, when properly labeled.''

These plaintiffs are clearly ''general dealers—not druggists,'' engaged in selling ''household remedies in original packages properly labeled,'' and are within the language of the exception. As pointed out by counsel for plaintiff, the exception goes to the whole act, and not to the particular section in which it is found, and we would be compelled to construe the exception as meaning something entirely different from what the language used imports in order to hold these defendants guilty of an offense. Sections 12 and 19 may, without any distortion of language, be construed together without necessary conflict, because there may be itinerant venders of drugs, nostrums, and remedies not proprietary and not put up

in original packages and not properly labeled, and who therefore, would incur the penalties denounced in Section 19.

Counsel for the state ably and plausibly argue that the exception in Section 12 was not intended to apply to the venders required by Section 19 to take out a license, and this may be true; but it is dangerous to attempt to extend the operations of a penal law by construing it beyond its plain language. The framers of the law may have intended to confine the operation of the exception in Section 12 to that particular section, or to some other sections, but they have in fact and by express language made it applicable to the whole act, and we must take the act as we find it, leaving to the legislature the correction of supposed errors.

The decree of the Circuit Court will be reversed, and a decree entered here, restraining further prosecutions of these plaintiffs for sales of proprietary or patent medicines, or household remedies, in original packages properly labeled.

REVERSED AND DECREE ENTERED.