Submitted on briefs September 9, affirmed October 7, 1924.

## STATE *v.* R. V. McFALL.

### (229 Pac. 79.)

**Constitutional Law—Presumption of Validity of Statute Overcome, Where Act Plainly Unconstitutional.**

1. The presumption in favor of the validity of a law is overcome, where statute is clear, and legislative intent manifest, and act plainly conflicts with Constitution.

**Constitutional Law—Court will not Hold Act Unconstitutional, Unless Satisfied of Its Invalidity Beyond Reasonable Doubt.**

2. Courts will not hold legislative acts unconstitutional, unless satisfied, beyond reasonable doubt, of their invalidity, but will adopt such interpretation as will make statute constitutional, if language will permit.

**Druggists—Vending of Drugs Within Police Power.**

3. The unrestrained pursuit of the vending of nostrums and drugs affects the health, morals and welfare, and regulation is clearly within reach of police power.

**Constitutional Law—Classification of License Tax must Afford Equal Protection of the Laws.**

4. The classification for purpose of license tax must be reasonable, so as to afford equal protection of the law to all persons similarly situated with reference thereto.

**Licenses—Power to License Includes Power to Exact Reasonable License Fee.**

5. The power to license itinerant drug venders includes power to exact reasonable license fee, the size of which rests within legislative discretion, which must not be abused.

**Licenses—Act not Exercise of Taxing Power, Because Revenue Results.**

6. Notwithstanding revenue may result from exercise of police power, this alone does not make act an exercise of the taxing power.

Licenses—License Law Held not Invalidated by Disposition of Fees.

7.  Section 8652, Or. L., as amended by Laws of 1921, Chapter 126, Section 4, imposing license fees on itinerant venders of drugs, is not rendered invalid by the diversion of one half of the license fees to public schools.

Constitutional Law—Druggists—Act Imposing License Fees on Itinerant Drug Venders Valid.

8.  Section 8652, Or. L., as amended by Laws of 1921, Chapter 126, Section 4, imposing license fees of $100 per annum on itinerant drug venders, *held* valid, and not in conflict with Constitution of the United States, Amendment .14, Section 1.

From Washington: GEORGE R. BAGLEY, Judge.

In Banc.

The defendant was indicted and convicted for violating the provisions of Section 8652, Oregon Laws, as amended by Section 4, Chapter 126, General Laws of Oregon of 1921. The indictment accused him of acting as an itinerant or traveling vender of drugs, ointments and other applications for the treatment of diseases and injuries, without having first obtained a license therefor. The defendant demurred to the indictment, upon the ground that the same failed to state facts sufficient to constitute a crime. He also averred that the act under which he was indicted "is unconstitutional and void," in that it contravenes the provisions of the Constitution of the United States and of the State of Oregon. The demurrer was overruled. Thereafter, the defendant entered a plea of not guilty, waived a trial by jury, and, upon stipulation as to the facts, was tried before the court without a jury.

It was admitted that at the time of the alleged sale charged in the indictment, the defendant was not authorized according to the laws of this state to sell

8.  Validity of statutes requiring druggists and pharmacists to be licensed, see notes in 129 Am. St. Rep. 294; 10 Ann. Cas. 400.

See 12 C. J., §§ 220, 221, 222; 19 C. J., §§ 4, 6, 16 (1926 Anno.); 25 Cyc., pp. 599 (1926 Anno.), 611 (1926 Anno.), 621.

drugs, ointments and applications for the treatment of diseases and injuries, and that "said defendant R. V. McFall did, within Washington County, Oregon, on the 31st day of May, A. D. 1922, while acting as an itinerant or traveling vender of drugs, ointments and other applications for the treatment of diseases and injuries, sell to one Mrs. A. M. Leach drugs and ointments for the treatment of diseases and injuries, to wit, One bottle of Rawleigh's Ru-MexOl, and one can of Rawleigh's medicated ointment." The medicines were offered and received as exhibits in the trial of the cause.

The court made findings of fact and conclusions of law, adjudged that the defendant was guilty, and sentenced him to pay a fine of $150, from which judgment he appeals to this court, asserting that the section of the act under which he was convicted offends against the federal and state Constitutions.

AFFIRMED.

For appellant there was a brief over the name of *Mr. W. O. Sims.*

For respondent there was a brief over the name of *Mr. E. B. Tongue,* District Attorney.

BROWN, J.—1. We approach the consideration of the question here involved with the presumption that the section of the statute assailed is valid and constitutional. Yet, while the presumption is in favor of the validity of the law, if the language of the statute is clear and the legislative intent manifest, and the act plainly conflicts with the Constitution, there is no room for presumption.

2. It is a declaration of commonplace law that courts will not hold legislative acts to be unconstitu-

tional unless satisfied, beyond a reasonable doubt, of their invalidity.

The defendant in this case having attacked the constitutionality of the statute, it becomes the duty of the court, in adherence to another canon of statutory construction, to adopt such interpretation as will make the statute constitutional if its language will permit.

For many years the law of this state has denied the right of itinerant venders to sell drugs without first having obtained a license therefor.

Section 8652, Oregon Laws, is Section 19 of Chapter 164, Laws of 1913, the title of which reads:

"An act to regulate the practice of pharmacy and the possession and disposal of poisons and other drugs, and to repeal Sections 4750 to 4773 inclusive of Chapter 7 of Title XXXV of Lord's Oregon Laws, and all acts and parts of acts inconsistent with this act."

The legislative assembly of 1917, by Chapter 287, passed an act entitled:

"An act to amend Sections 4, 9, 17, 19, 21 and 22, and repealing Section 20, of Chapter 164 of the Laws of Oregon of 1913."

Section 4 of Chapter 126, Laws of 1921, entitled: "An act to amend Sections 8635, 8642, 8647 and 8652, Title XLV, Chapter XXVI, Oregon Laws, of (relating to) the practice of pharmacy and the disposal of poisonous drugs," reads:

"Any itinerant or traveling vender or hawker of any drug, nostrum, * * or ointment or application of any kind for the treatment of any disease or injury or deformity, before offering for sale or selling any such drug, nostrum, * * or ointment or application of any kind for the treatment of any disease or injury or deformity, shall pay to the treasurer of the Oregon board of pharmacy an annual fee of one hundred dollars ($100), upon the receipt of which the secre-

tary of the board shall issue a license for one year from the date of said payment; one-half of all such license fee(s) shall be devoted to defraying the expenses of the board, and the remainder shall be paid as it is received by the treasurer of the Oregon board of pharmacy into the state school fund.''

The section defines itinerant venders, and the act prescribes a penalty for its violation.

The statute is too lengthy to set out in full. However, in addition to the above, among other things it provides for the appointment, qualification and duties of a board of pharmacy, for the examination and registration of pharmacists and assistants, and the revocation of license therefor. It authorizes the appointment of inspectors of pharmacy, who shall inspect places where drugs are compounded and disposed of and who shall prosecute all persons whenever in the judgment of the board reasonable grounds exist for such action. Section 8643 of the act provides for regulation of the sale of poisons and narcotics. Section 8644 authorizes the board to prohibit the sale of poison or alcoholic mixtures. Section 8645 makes it ''unlawful for any person * * to sell * * or give away * * any cocaine, opium, morphine, codeine, heroin, alpha eucaine, beta eucaine, nova caine, or chloral hydrate * * , excepting upon the written order or prescription of a physician or dentist, or veterinary surgeon licensed to practice in this state.'' Section 8637 requires the sheriff and police officers of the state to furnish a list of drug-stores doing business and the names of owners and employees therein.

The prosecution contends that the law under which the defendant stands convicted is an expression of the police power of the state.

In *Union Fishermen's Co.* v. *Shoemaker*, 98 Or. 659 (193 Pac. 476), this court, speaking through Mr. Justice Harris, said, concerning the reach of the police power:

"The police power embraces the whole sum of inherent sovereign power which the state possesses, and, within constitutional limitations, may exercise for the promotion of the order, safety, health, morals, and general welfare of society."

In the case of *State* v. *Miller,* 54 Or. 381, 386 (103 Pac. 519), the defendant, basing his argument upon the holding of this court in *State* v. *Wright,* 53 Or. 344 (100 Pac. 296), wherein the defendant was convicted for peddling vehicles without a license, asserted the invalidity of the then law relating to itinerant drug venders. This court there spoke as follows:

"Reasonable regulation by law of the sale of drugs, medicines and poisons by retailers has been uniformly upheld as a valid exercise of police power: 14 Cyc. 1079. The object of such laws is the protection of public health: *Commonwealth* v. *Zacharias,* 181 Pa. 126 (37 Atl. 185); and statutes requiring itinerant venders of drugs, who publicly profess to cure disease thereby, to pay a license fee, have been upheld upon the same grounds: 14 Cyc. 1083; *State* v. *Gouss,* 85 Iowa, 21 (51 N. W. 1147). There is certainly a reasonable distinction to be made between the sale of stoves, ranges, wagons, carriages, fanning-mills, on the one hand, and drugs, nostrums, ointments and applications for the treatment of diseases and injuries. The former are harmless and have no hidden power liable to injure public health, while the composition of the latter is generally secret, and frequently contains deleterious elements unknown to the purchasers. The distinction arises from the inherent quality of the article vended, and not from the character of the persons vending them."

3. The unrestrained pursuit of the vending of nostrums and drugs affects the public health, morals, and welfare, and its regulation is clearly within the reach of the police power.

"Some governments derive a considerable revenue from a judicious exercise of the power of regulation. * * If the primary purpose of the legislature in imposing such a charge is to regulate the occupation or the act, the charge is not a tax, even if it produces revenue for the public. If, however, the primary purpose of such a charge is revenue, it is a tax and is subject to the limitations upon the power of taxation, and not to the limitations upon the power of regulation. A characteristic example of a pecuniary charge imposed under the power of regulation is a license fee imposed by a state under its general police powers upon acts or occupations which, unless controlled, are hurtful to the public health, safety or morals. Thus, a high liquor license fee is not a tax." 26 R. C. L., § 4, "Taxation."

4. However, the classification for the purpose of a license tax must be reasonable so as to afford equal protection of the law to all persons similarly situate with reference thereto: 25 Cyc. 621.

Statutes imposing a license tax have been condemned by this court as unconstitutional because the classification is unreasonable, in that it discriminates against certain persons and classes without reason therefor: *State* v. *Wright, supra.* Furthermore, a statute exacting a privilege tax must constitute more than a mere pretense of promoting or protecting the public welfare; and it must also have some reasonable relation to its pretended object: *McCullough* v. *Brown,* 41 S. C. 220 (19 S. E. 458, 23 L. R. A. 410).

5. The legislature has the discretion to classify occupations, taxing some while leaving others alone. The only constitutional or other limitation upon the

imposition of license taxes relating to their equality and uniformity is that they shall be equal and uniform on all persons and subjects embraced within the same class. The law under which the defendant has been indicted and convicted acts uniformly throughout the state and embraces alike all persons who choose to place themselves within its reach by becoming itinerant venders of drugs. The power to license itinerant drug venders includes the power to exact a reasonable license fee for the exercise of the privilege granted by the license. The size of the fee imposed by the state rests within legislative discretion. However, such discretion must not be abused.

The following cases illustrate license fees or privilege taxes which have been upheld as reasonable: *Walla Walla* v. *Ferdon,* 21 Wash. 308 (57 Pac. 796), a fee of $50 a day on traveling venders of drugs who accompany their sales with public exhibitions in the streets: *Fairfield* v. *Shallenberger,* 135 Iowa, 615 (113 N. W. 459), a license fee of $50 a year on itinerant physicians; *City of Duluth* v. *Krupp,* 46 Minn. 435 (49 N. W. 235), a fee of $100 a year, $60 for six months, $15 a month, or $5 a day, for peddling; *State* v. *Jensen,* 93 Minn. 88 (100 N. W. 644, 133 Am. St. Rep. 329), a fee of $125 a year for peddling; *People* v. *Grant,* 157 Mich. 24 (121 N. W. 300), a fee of $2 a day, $10 a week, $25 a month, $50 for three months, and $200 a year, of transient traders.

In support of defendant's contention he cites, among other cases, *Ellis* v. *Frazier,* 38 Or. 462 (63 Pac. 642, 53 L. R. A. 454), and *Reser* v. *Umatilla County,* 48 Or. 326 (86 Pac. 595, 120 Am. St. Rep. 815).

In *Ellis* v. *Frazier, supra,* the court decided that the imposition was a tax and not a license fee, and that by reason of its failure to require uniformity in the assessment of taxes on bicycles, that provision of the statute contravened Article IX of the organic law of the state. The act applied to ten counties only and was invalid as a local law.

In *Reser* v. *Umatilla County, supra,* the court held that the law under consideration was not a license but a revenue law and unlawfully imposed a tax upon foreign sheep.

6. It is a well-established rule of law that, notwithstanding revenue may result from the exercise of the police power, this alone does not strip the law of its police character and make of it an exercise of the taxing power.

We cannot say that the imposition of a license tax of $100 per annum upon an itinerant drug vender voids the section of the statute attacked.

In the instant case the argument that a license tax should not exceed the cost of issuing the license and the cost of administration of the drug act is without merit: *Hofer* v. *Carson et al.,* 102 Or. 545 (203 Pac. 323). The motor vehicle license tax is a tax upon the privilege of driving such vehicles over the highways of the state. The license fee exacted for such purpose is not limited to the cost of issuing the license and the administration of the act, but millions of dollars in revenue have been derived from license taxes which have been applied to the payment of the interest and the redemption of road bonds of the state.

The case of *State of Iowa* v. *Wheelock,* 95 Iowa, 577 (64 N. W. 620, 58 Am. St. Rep. 442, 30 L. R. A. 429), is much in point. There, as here, the license

tax was $100 per annum. In that case the defendant asserted that the license fee was not an exaction under the police power, but was, in effect, a tax upon the goods shipped and sold by the licensee, upon the property of a nonresident while in the hands of the owner, and, before the same had become a part of the mass of the property of the state of Iowa, which was seeking to tax it. The Supreme Court of Iowa said:

"That the enactment of the laws in question was within the police power of the state is affirmed in principle by numerous authorities, some of which are of long standing, and cannot now be successfully questioned. In *Re Rahrer*, 140 U. S. 545 (35 L. Ed. 572, 11 Sup. Ct. Rep. 865), it was said that: 'The power of the state to impose restraints and burdens upon persons and property, in conservation and promotion of the public health, good order, and prosperity, is a power originally and always belonging to the states, not surrendered by them to the general government, nor directly restrained by the Constitution of the United States, and essentially exclusive.'"

Again quoting from the Iowa court, as to the purpose of the act:

"The primary object of the acts is not to derive a revenue for the use of the state, but in large part, at least, to protect its citizens against solicitations and harmful practices of irresponsible and unknown traveling venders of drugs and other articles intended for the treatment of diseases or injury, who, in carrying on their business, publicly profess to cure or treat diseases, injuries, or deformities, and thus promote the sale of their wares to the credulous. * * *State v. Bair*, 92 Iowa, 28 (60 N. W. 486)."

In the same case the court, in speaking of the amount of the license, said:

"The amount of the license fee required by the statutes under consideration is not excessive, and the regulations adopted by them are reasonable."

In the case at bar the defendant expressly states, under points and authorities, on page 6 of his brief:

"When the entire license collected from itinerant vendors of drugs goes to a board of pharmacy for regulation, the act will be sustained."

It was the judgment of the lawmakers that the common welfare was better served by diverting one half of the license tax to the state school fund. This disposition of the license fee does not, of itself, determine the reasonableness of the amount of the tax.

There is a marked distinction between regulating the sale of harmless goods and the sale of drugs that may be harmful and injurious to public health or morals: *State* v. *Wright, supra; State* v. *Miller, supra.*

It is established that a distinction in legislation is not arbitrary. "If any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed." *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78 (55 L. Ed. 369, Ann. Cas. 1912C, 160, 31 Sup. Ct. Rep. 337, see, also, Rose's U. S. Notes).

7. The occupation of the drug venders affects the public health, and the diversion of one half of the license fees to the public schools, where the pupils are instructed in matters pertaining to health, is a rightful and valid use of such funds and does not render the act invalid.

8. The act does not conflict with the federal Constitution as claimed by defendant.

In *Anderson* v. *Farr,* 97 Or. 137 (191 Pac. 346), Mr. Chief Justice McBRIDE, in writing of the law now under consideration, said:

"Neither does the act violate Section 1 of the Fourteenth Amendment to the Constitution of the United

112 Or.—13

States: *Baccus* v. *Louisiana,* 232 U. S. 337 (58 L. Ed. 627, 34 Sup. Ct. Rep. 439, see, also, Rose's U. S. Notes); *Ex parte Gilstrap,* 171 Cal. 108 (152 Pac. 42, Ann. Cas. 1917A, 1086)."

This case is affirmed.                        AFFIRMED.