CITY OF DULUTH *vs.* PETER KRUPP and another.

July 1, 1891.

**City Ordinance—Presumption of Legality in Enactment.**—The same presumptions obtain that a city ordinance was legally passed as in the case of an act of the legislature.

**Same—Ordinance Invalid in Part.**—The fact that an ordinance, contrary to a prohibition in the city charter, contains provisions upon an independent subject, not connected with that expressed in the title, does not invalidate the remainder of the ordinance.

**Same—Reasonableness of License Fee.**—A license fee of $100 for one year, $60 for six months, $15 for one month, and $5 for one day for peddling within the city of Duluth, cannot be held unreasonable.

**Same—License Fee for Peddling.**—Where an occupation, like hawking or peddling, is liable to become a public nuisance if not restrained, it is a legitimate exercise of the police power to impose a license fee large enough to act as a restraint upon the number of persons who might otherwise engage in it, even although the sum exacted is greater than the expense of issuing the license, and of police supervision of the business.

**Same—Evidence of Acts of Peddling.**—Evidence considered, and *held* that the acts of the defendants constituted "peddling," within the meaning of the ordinance.

Appeal by defendants from an order of the municipal court of Duluth, refusing a new trial in a prosecution for violating the ordinance considered in the opinion.

*H. S. Lord,* for appellants.

*S. D. Allen,* for respondent.

MITCHELL, J.[1] The defendants were convicted of peddling without a license, contrary to the provisions of a city ordinance entitled "Ordinance No. 19. Peddlers, how Licensed," passed by the city council in the assumed exercise of the power granted them by the city charter "to license and regulate all peddlers doing business within the city." Section 1 of the ordinance forbids peddling within the city without a license. Section 2 provides for the issuing of

---

[1] Collins, J., was absent and took no part in this case.

licenses, and fixes the amount of the fee at $100 for a year, $60 for six months, $15 for a month, and $5 for one day. Section 3 defines the term "peddling" as including all persons who go about the city selling or offering to sell personal property; but provides that it shall not include persons selling at wholesale to dealers, or to the acts of merchants or their employes in taking orders for goods in stock at their places of business, at the houses of their customers. Section 4 prohibits any one, "whether licensed under this ordinance or not," from calling attention to their business or the wares which they have to sell by crying them out, blowing a horn, ringing a bell, or by any other loud or unusual noise. Section 5 affixes the penalty for the violation of the ordinance. The defendants claim that the ordinance is invalid on three grounds, viz.: (1) That it was never legally passed; (2) that it embraces more than one subject, one of which is not expressed in the title; and (3) that it is not a legitimate exercise of the police power to regulate peddling, but a mere tax for revenue purposes, as demonstrated by the unreasonable amount of the license fee exacted, and the fact that its provisions in no way look to the regulation or control of the business.

1. The charter provides that "no ordinance shall be passed at the same meeting at which it was presented, except by the unanimous consent of all the members present, which shall be noted on the records; but this shall not preclude the passage of ordinances reported by any committee of the council to whom the subject of such ordinance shall have been referred at any previous meeting." The records introduced in evidence show that at a certain meeting an ordinance entitled, "Peddlers of Meat and Vegetables, how Licensed," was referred to a committee of the council, who at a subsequent meeting reported that in lieu of such ordinance they recommended the passage of the ordinance under which this prosecution was had, whereupon this ordinance was taken up, and put on its second and third reading, and passed; and it is admitted that at this last meeting the records do not show that unanimous consent was given for its passage. Assuming that it was not the case of "an ordinance reported by a committee to whom the subject of an ordinance had been referred at a previous meeting," still these records do not affirma-

tively show that the ordinance in question was first introduced at the meeting at which it was passed; and, as every presumption obtains in favor of the validity of an ordinance that there is in favor of the validity of an act of the legislature, the presumption, in the absence of proof to the contrary, is that it was introduced at some prior meeting. *State* v. *City of Hastings,* 24 Minn. 78.

2. The city charter provides that "the subject of every ordinance shall be expressed in the title, and no ordinance shall embrace more than one subject." It is urged that section 4 is repugnant to this requirement, inasmuch as its provisions are made applicable to all dealers, whether peddlers or not. If this criticism is well founded, still it would only go to the validity of that section, and only so far as its provisions apply to others than peddlers. *State* v. *Kinsella,* 14 Minn. 395, (524;) *Miss., etc., Boom Co.* v. *Prince,* 34 Minn. 79, 85, (24 N. W. Rep. 344.) The validity of this section is not involved in the present case.

3. The license fee exacted is somewhat large, and the provisions of the ordinance looking to the regulation of the business of peddling are somewhat meagre. But the fourth section certainly contains provisions tending to secure the orderly pursuit of the business; and the mere fact of exacting a license fee is one method of restricting it, which is itself a legitimate method of regulating some kinds of business. The latitude that is given to municipal bodies in fixing the amount of license fees, and the duty of courts not to declare the amount thus fixed unreasonable, except in very plain cases, have been fully considered by us in former cases. See *City of Mankato* v. *Fowler,* 32 Minn. 364, (20 N. W. Rep. 361;) *In re White,* 43 Minn. 250, (45 N. W. Rep. 232.) If this was a case of one of the ordinary legitimate kinds of business, like that of butcher, baker, auctioneer, or the like, which are not liable to become public nuisances, and consequently no occasion or right existed to restrict the number of persons who shall engage in it, it might be a question whether the fee exacted would not be unreasonable. But the evils liable to grow out of some occupations may be such that their suppression can only be attained to an appreciable degree by the imposition of some restraint upon the pursuit of such callings or kinds of busi-

ness. In respect to the great majority of occupations, no such evils are likely to follow; and consequently it would not be competent to attempt to restrain the number of those engaging in them by the imposition of a large license fee. All that could be required would be an amount sufficient to pay the cost of issuing the license, and to defray the expense of necessary police supervision. But where the business is of such a nature that its prosecution will do damage to the public, or that it is liable to degenerate into a public nuisance, then it is a legitimate exercise of the police power to impose a license fee large enough to act as a restraint upon the number of persons who might otherwise engage in such business. Tied. Lim. 274 *et seq.* It is upon this principle that very high license fees are exacted from those vending intoxicating liquors. Peddling, although in itself a moral and lawful pursuit, is one of the kinds of business which, if not thus restrained, is very liable to become a great nuisance, especially in cities, as almost every one knows by actual experience; and in view of that fact it was a legitimate exercise of the police power vested in the city of Duluth to exact a license fee large enough to restrict the number of persons engaging in peddling, even although the sum was larger than enough to pay the cost of license and the expense of any police surveillance which the city might exercise over the business. In view of all the circumstances, we cannot say that the fee exacted is unreasonable.

4. It is further urged that the evidence did not justify the conviction; in other words that the acts complained of did not constitute peddling. The evidence showed that the defendants were butchers who had a meat-shop in the city of Duluth; that they had a "delivery wagon," which they sent out in charge of an employe with meat to be delivered to fill orders previously given by their customers, but that at the same time they were accustomed to send out in the wagon other meat, also knives for cutting it, and scales for weighing it, and that the employe in charge of the wagon was accustomed to drive from place to place soliciting business, and selling to such as desired to buy from him, cutting up the meat, and weighing it out to the purchaser from the wagon. He solicited purchasers for the meat not only from the wagon, but by going from house to house when inmates

did not see him and come out to the street.    The defendants may not have belonged to the class of peddlers at which the ordinance was primarily aimed, but this mode of doing business constituted "peddling," not only within the definition given in the ordinance, but also according to the general and accepted definition of that term.    The fact that the person in charge of the wagon may have, as he testified, only solicited those whom he calls "customers,"—that is, persons who had been accustomed to buy from him,—did not make it any the less "peddling." *City of Chicago* v. *Bartee,* 100 Ill. 57; *Graffty* v. *City of Rushville,* 107 Ind. 502, (8 N. E. Rep. 609.)

The exclusion of the evidence complained of in the sixth assignment of error was at most error without prejudice, as the whole matter sought to be inquired of was afterwards fully gone into without objection.

We find no error in the record, and the result is that the order appealed from must be affirmed.

DICKINSON, J.    I am not prepared to concur in the views expressed in the third division of the foregoing opinion.