GEORGE HIGGINS and Another v. W. C. LACROIX and Others.[1]

August 9, 1912.

Nos. 17,761—(191).

**Village ordinance — evidence inadmissible.**

For the purpose of determining the validity of a general ordinance relating to the good order and government of a village, it is error to receive in evidence admissions by individuals of the village council that the motive in enacting the ordinance was to accomplish a nonpermissible or unlawful end.

**License fee — evidence of reasonableness.**

In determining whether a license fee of $200 per annum for a permanent moving picture show is unreasonable, evidence may properly be received as to the character and number of the inhabitants of the village, its situation, the general character of the exhibitions of the kind in question in similar villages, the crowds attracted, and the need of police surveillance; but *held*, that in this case it was error to receive evidence of the kind of exhibitions carried on by these plaintiffs, and to consider the good quality thereof as controlling on the question of the reasonableness of this, a general ordinance, fixing a license fee for all who might conduct moving picture shows in the village.

**License fee not excessive.**

The license fee mentioned for a permanent moving picture show in a village of one thousand inhabitants is *held* not so excessive as to clearly manifest either a purpose to tax or prohibit under the guise of license; such business being one which is liable to degenerate, is likely to require considerable police surveillance, and which is of a kind wherein regulation and restraint may be imposed in the amount of the license fee itself.

**Injunction.**

Injunction is not the appropriate remedy available to a village in case of violations of its general ordinances.

Action in the district court for Itasca county against W. C. Lacroix, as president, and others as members, of the village council of Deer River, and others, for a permanent injunction to restrain defendants,

[1] Reported in 137 N. W. 417.

119 M.—10.

their officers and agents, from interfering with plaintiffs in the conduct of their business of operating a motion picture theater, or from destroying their business.

The complaint, among other matters, alleged that defendants had interfered with their business and threatened to compel plaintiffs to discontinue it, and defendant police officer had been instructed to order plaintiffs to close the doors of their theater and discontinue the business. The answer alleged the existence of a village ordinance, prohibiting the carrying on of a business or occupation of the nature of that of plaintiffs without having a license so to do; alleged that plaintiffs had wholly failed, refused and neglected to obtain or apply for a license, but notwithstanding had ever since December 28, 1910, carried on their business in violation of the provisions of the ordinance; that in their official capacity defendants had caused plaintiffs to be arrested and instructed the village marshal to close plaintiffs' place of business until they should comply with the ordinance. The reply, inter alia, alleged that the ordinance was unreasonable as applied to the business of plaintiffs.

The case was tried before Stanton, J., who made the findings stated in the opinion and as conclusions of law found that the license fee attempted to be imposed was unreasonable, excessive and prohibitive, and that it was adopted for the purpose of revenue; that the ordinance was invalid, and that plaintiffs were entitled to the relief prayed for. From the judgment entered pursuant to the findings, defendants appealed. Reversed with directions to dismiss the action on the merits.

*Thwing & Rossman,* for appellants.

*Spear & Stone,* for respondents.

HOLT, J.

At the suit of plaintiffs the court enjoined the defendants, as officers of the village of Deer River, from prosecuting plaintiffs for conducting a moving picture show without a license in the village. The defendants appealed from the judgment.

Under the statute empowering village councils "to prevent or license and regulate the exhibition of circuses, theatrical perform-

ances, or shows of any kind," the village council of Deer River, a village of about one thousand inhabitants, duly passed an ordinance fixing a license fee of $200 per annum for "every permanent theater, theater comique, vaudeville theater, electric theater, variety show, moving picture show, or other show of similar nature." The fee prior thereto had been $20 per annum. Plaintiffs are the owners of a leasehold in a building in the village wherein they conduct a permanent picture show. Although they applied for a license, they refuse to pay the fee fixed by the ordinance. For running the show without a license plaintiffs have been subjected to unsuccessful criminal prosecutions, and these defendants threaten to continue to prosecute them. The prosecutions have affected plaintiffs' business injuriously and interfere with their enjoyment of the leasehold mentioned. The court also found that plaintiffs always conducted the picture show in a quiet, orderly, and inoffensive way, and that it has always been of a clean, moral, and instructive nature, and that no disturbance or disorder of any kind has ever occurred; that the expenses of conducting the show, including therein a fair living for the one who runs it, equal the receipts; that it could not be carried on if the license fee fixed is exacted; and the ordinance was held unreasonable, excessive, prohibitive, adopted for revenue, and invalid. In the answer defendants, in addition to a denial of the invalidity of the ordinance, attempted to set up a counteraction asking that plaintiffs be enjoined from operating their show until they paid for and obtained a license. The court sustained plaintiffs' demurrer to defendants' cause of action.

The errors assigned may be considered under three heads: (a) Rulings on the admission of evidence; (b) the validity or invalidity of the ordinance; and (c) the ruling on the demurrer to defendants' attempted cause of action.

Against the objections of defendants, testimony was received of admissions by individual members of the village council tending to show that their motive in fixing the license fee was to obtain funds for a depleted village treasury. The findings clearly indicate that this evidence, in a large measure, influenced the conclusions of the learned trial court against the validity of the ordinance. We think

evidence of the motives of the individual members of the village council in passing the ordinance was erroneously received. Legislative acts would rest on insecure ground, indeed, if admissions of the individual legislators that the attainment of a nonpermissible or unlawful end was the motive and purpose in enacting a law are to be received in evidence and be considered by the courts when called to pass on their validity. Discussions of lawmaking bodies when considering and enacting a law may, when the language is obscure and doubtful, be considered by the courts for the purpose of arriving at the true intent and meaning of the act, but manifestly it ought to be beyond the power of one who has been intrusted with authority to enact a law to impeach the same by any subsequent statement of secret or avowed motives entertained at the time of its passage that would work its invalidity. 28 Cyc. 375, 376.

In Soon Hing v. Crowley, 113 U. S. 703, 710, 5 Sup. Ct. 730, 28 L. ed. 1145, it is said:

"The rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferable from their operation considered with reference to the condition of the country and existing legislation." An exception to this general rule may be found where an act or ordinance relates to a private contract and was passed to defraud. We conceive that the general rule just stated applies to ordinances of a municipality when they relate solely to the good order and government of the same. State v. City of Lake City, 25 Minn. 404.

We are also of opinion that it was error to receive evidence as to the manner in which these plaintiffs carried on their business, and to let that influence the conclusion upon the validity of the ordinance. On the issue of the reasonableness of the ordinance it was proper to receive evidence as to the number and character of the inhabitants, floating population, and frequenters of the village; as to crowds attracted to amusements that come under the general designation of picture shows, the policing of the same, the kind of exhibition usually staged at moving picture shows in villages situated and made

up of a population similar to this village. For this ordinance is general in its application and was not enacted specially for these plaintiffs. It can therefore be of no consequence how they conduct their show, or with what result to themselves. Because the pictures heretofore shown by them have been clean, moral, and instructive, there is no assurance that they will continue so to be. Others may open moving picture shows in the village of a tone different from plaintiffs' and may meet with better pecuniary result.

The main question is the validity of the ordinance, for, even if the evidence above referred to was erroneously received and given effect in the decision, still the judgment is right if the ordinance be invalid. The ordinance is a general enactment covering a number of licensed occupations. However, separate license fees are fixed for the different pursuits, so that the ordinance may be unreasonable as to the fee fixed for one business and proper and valid as to that fixed for another. Therefore the license fee fixed for auctioneers, peddlers, bowling alleys, etc., need not be considered because it can have no bearing on the reasonableness of the license fee here involved. The sole attack is that the license fee of $200 per annum is excessive and a tax upon a business such as a permanent moving picture show in a village the size of Deer River.

Certain propositions are established by decisions of this court which seem to indicate and control the proper determination of the status of this ordinance. A village council may fix a fee for a licensed calling or business which shall include the necessary cost of issuing the license, and the reasonable expense of supervision and police control over the conduct of the calling or business licensed. It has no right to exact or levy a tax under the guise of a license. However, in fixing the license fee the municipality is accorded a wide discretion. Courts are not to usurp the functions of village or city authorities in the matter. Unless the amount is so manifestly unreasonable that there is no escape from the conviction that the power given has been abused or exceeded in fixing a license fee, is the court authorized to declare the ordinance illegal. A vocation or business may of itself be such that a license fee sufficiently large to act as a restraint or regulation is properly imposed.

"In respect to exhibitions, amusements, etc., a larger discretion on the part of the municipal corporation is recognized than in the case of trades and useful occupations, and the rule has, of course, a still broader application where the business is such as is liable to degenerate into a nuisance, or such as tends to promote disorder or crime," is stated in City of Mankato v. Fowler, 32 Minn. 364, 20 N. W. 361.

In City of Duluth v. Krupp, 46 Minn. 435, 49 N. W. 235, it is held that, where an occupation "is liable to become a public nuisance if not restrained, it is a legitimate exercise of the police power to impose a license fee large enough to act as a restraint upon the number of persons who might otherwise engage in it, even although the sum exacted is greater than the expense of issuing the license and of police supervision of the business."

Mr. Justice Mitchell, in upholding a theater license fee of $125 for six months in City of Duluth v. Marsh, 71 Minn. 248, 249, 73 N. W. 962, uses this language: "In respect to theatrical exhibitions and amusements of similar character, a larger discretion on part of municipalities is recognized than in the case of ordinary trades and occupations, both because they are liable to degenerate into nuisances, and also because they require more police surveillance, and police service."

Moving picture shows are of comparatively recent origin but of rapid growth, springing up everywhere in the large cities and invading even villages and towns of modest size. While, as generally conducted, some educational value may be conceded to exist in these shows, it is nevertheless true that the chief aim is to furnish the sort of entertainment that will draw the most dimes. To furnish people with innocent and cheap amusement is laudable, but experience teaches that, where amusements are furnished for pecuniary profit, the tendency is to furnish that which will attract the greatest number rather than that which instructs or elevates. To say the least, opinions are quite at variance as to the merits of moving picture shows as an influence for good or evil in a community. It must therefore be classed among those pursuits which are liable to degenerate and menace the good order and morals of the people, and may therefore

not only be licensed and regulated, but also prevented by a village council. Section 727, subd. 12, R. L. 1905. Common observation reveals the fact that crowds attend these picture shows afternoons and evenings every day in the week. In or about the entrance of the show place in the small village is undoubtedly the rendezvous of the young and thoughtless, as well as the vicious. Police surveillance is likely to become a necessity because of this. In the light of all the facts connected with moving picture shows, the possibilities therein to degenerate and require policing, we are of opinion that, under the principles announced in the decisions above cited, the license fee fixed by the village council of Deer River is not so unreasonably high as to manifestly show an abuse of power or any unlawful purpose or result.

We cannot agree to the contention that the ordinance is a prohibition under the guise of license and regulation. The village is presumably a growing community, now having more than one thousand inhabitants. These shows are usually carried on every day in the week with several performances each day. Fifty-five cents per day does not appeal to us to be so high that it necessarily results in prohibiting moving picture shows from locating in Deer River. Moreover, the fact that plaintiffs have failed to make any particular profit out of the venture does not prove that others may not be able to make a success thereof. We therefore consider the trial court wrong in holding the ordinance invalid.

Defendants also claim that the court erred in sustaining the demurrer to that part of the answer wherein an attempt is made to set out a cause of action for an injunction against plaintiffs' conducting their business without first obtaining the license required. Plaintiffs' right to equitable relief, even were the ordinance void, may not be free from doubt; but, since that objection has not been pressed by appellants, we have considered plaintiffs' cause of action on its merits. However, we are clear that defendants have no right on the facts pleaded to an injunction. The claim is that the two village justices before whom alone prosecutions against plaintiffs for violation of the ordinance can be instituted have declared the ordinance void, and defendants have no adequate remedy at law. It is not to be pre-

sumed that hereafter they will so hold. Moreover, criminal statutes and ordinances cannot be enforced by injunction. If that were permissible, the constitutional guaranty of trial by jury would be of little avail in many cases. It has never been contemplated that, if justices of the peace or trial courts should take an erroneous view of the validity of a criminal law or ordinance, this entitles the state or the municipality to come into a court of equity for relief. Were such a rule adopted, the result would plainly be confusion in the established practice without any compensating advantage in the furtherance of justice.

Our conclusion is that the judgment must be reversed, with directions to the trial court to dismiss the action on the merits.

So ordered.