O'HARA *v.* COLLIER.

1. MUNICIPAL CORPORATIONS—LICENSES—MUNICIPAL REGULATION —PEDDLERS.

An ordinance of the city of St. Joseph, requiring a license fee of $4 for one day and $100 a year for the privilege of peddling flour and other cereal products, is not as a matter of law unreasonable or invalid as a police regulation, and does not amount to a tax.  1 Comp. Laws, §§ 3107–3110, 2 How. Stat. (2d Ed.) §§ 5629–5632.

2. SAME—PRESUMPTIONS.

Every presumption is indulged in favor of the reasonableness of such an ordinance; the courts can only interfere in case of an abuse of the legislative discretion vested in the city council.

Certiorari to Berrien; Coolidge, J.    Submitted January 14, 1913.    (Calendar No. 24,805.)    Decided February 18, 1913.

Mandamus by James O'Hara, city attorney of the city of St. Joseph, against Joseph R. Collier, Jr., one of the justices of the peace for said city, to compel respondent to issue a warrant applied for by relator.    An order denying the writ is reviewed by relator on writ of certiorari. Reversed.

*James O'Hara* (*Chester P. O'Hara*, of counsel), for appellant.

STONE, J. This case has been brought to this court on certiorari to review the action of the circuit court in refusing to grant a peremptory mandamus. The relator is the city attorney of the city of St. Joseph. The respondent, a justice of the peace, having refused to issue a warrant upon the complaint of the relator filed with him, charging one David J. Stewart with a violation of the peddler ordinance of the city of St. Joseph, the relator petitioned the circuit court for the county of Berrien for a peremptory writ of mandamus, compelling the respondent so to do. An order to show cause having been issued, the respondent made his answer and return thereto, and the circuit court denied the peremptory mandamus on the ground that the ordinance was void, because the license fee imposed was excessive, exorbitant, and unreasonable, and the case has been brought here.

The city of St. Joseph is a city of the fourth class. The authority for the making of the ordinance is supposed to be found in sections 3107 to 3110, 1 Comp. Laws (2 How. Stat. [2d Ed.] § 5629 *et seq.*), relating to cities of the fourth class. The first section named empowers the council to pass such ordinances in relation to licenses as it may deem proper. Subdivision 11 of said section empowers the council to license peddlers, etc., and to regulate, license, or prohibit the sale or peddling of goods, etc., by persons going about from place to place in the city for that purpose. By section 3108 the council is empowered to prescribe the terms and conditions upon which licenses may be granted, and may exact and require payment of such reasonable sum for any license as it may deem proper. It will thus be seen that the charter leaves the fixing of the sum to the discretion of the council, and, unless it clearly appears that the legislative discretion has been abused, the courts will not attempt to interfere.

Section 1 of the ordinance provides that no person shall

engage in the business of hawking or peddling in the streets, or from door to door, without having obtained a license therefor. Section 6 provides that any person or persons who shall go about from house to house, or place to place, and sell, or offer to sell, any article of trade or commerce to be delivered then, or in the future, shall be deemed a hawker and peddler within the meaning of the ordinance. Another section provides that the provisions of the ordinance shall not apply to any farmer or gardener selling, or offering for sale, the produce of his own farm or garden. Section 4 of the ordinance fixes the license fee on some twenty odd articles of commerce and, among other fees, provides:

"The amount to be paid for the license provided for in this ordinance shall be as follows, viz.: * * * For flour, bran, middlings, ground corn or oats, $4.00 for one day, and $100.00 for one year."

It was the opinion of the circuit judge that this fee was excessive, exorbitant and unreasonable, and that therefore the ordinance is void. It is the claim of the relator that the man Stewart has, for a number of years, made a business of taking orders in the city for car load quantities of flour, and has sold and delivered a great number of car loads of flour every year to the citizens of St. Joseph; that his method is to go around and take orders for sacks of flour from 100 pounds up, from various families, and, when he received sufficient orders to fill a car, to have the car shipped and consigned to him at St. Joseph, there being nothing upon the sacks indicating who they were respectively for, and that after the arrival of the car to take from it and deliver to the citizens as many sacks as the latter had ordered, and that his sales of flour have amounted to many thousands of dollars a year. It is the further contention that the fee of $100 a year is hardly sufficient to compensate the officials for time spent in seeing that the people purchasing receive wholesome goods and full weight.

Can we say as matter of law that an ordinance that

compels a peddler of flour, etc., to pay a fee of $4 a day or $100 a year for the privilege of going about from place to place in the city and selling and offering for sale such commodities shows an abuse of legislative discretion vested in the council by charter or statute?

In discussing this subject, Mr. Tiedeman, in his work on Municipal Corporations (section 123), says:

"Although it is a judicial question whether the sum exacted is a reasonable one, a wide latitude is given to the exercise of legislative discretion, in the determination of the amount of the license fee. The license may be required as a police regulation, for the purpose of insuring the proper police supervision, whenever the character of the trade or business is such that the absence of the police supervision would occasion injury to the public, dealing with those engaged therein, * * * because it furnishes abundant opportunities for the perpetration of frauds, which without police supervision will very likely prove successful. On these general grounds, it is competent for a municipality to require licenses, and subjection to police supervision of * * * peddlers and itinerant venders, and others, upon whose honesty and care the public have to depend, often without previous acquaintance with them, and usually without opportunities for investigation."

The supreme court of Minnesota has held that a license fee of $3 a day for peddling is not excessive. Neither is a fee of $5 a day, $60 for six months, or $100 a year excessive. *In re White*, 43 Minn. 250 (45 N. W. 232); *Duluth* v. *Krupp*, 46 Minn. 435 (49 N. W. 235). In the first case above cited it was said:

"What is a reasonable fee must depend largely upon the sound discretion of the city council, having reference to all the circumstances and necessities of the case; and unless the amount is manifestly unreasonable, in view of its purpose as a police regulation, the court will not adjudge it a tax."

We understand the rule to be that every presumption is indulged in favor of the reasonableness of such an ordinance. The above Minnesota cases are cited with approval by this court in *People* v. *Baker*, 115 Mich. 201

(73 N. W. 115). In *City of Muskegon* v. *Zeeryp*, 134 Mich. 181 (96 N. W. 502), this court held that a license fee of $10 a week and $50 a year, exacted for peddling spices, etc., was not excessive, unjust, oppressive, or in restraint of trade, and that the ordinance was not as a whole unreasonable. We held, in *People* v. *Grant*, 157 Mich. 24 (121 N. W. 300, 133 Am. St. Rep. 329), that the license fee of $2 per day, $10 per week, $25 per month, and $50 for three months, was not unreasonable. In *City of St. Paul* v. *Colter*, 12 Minn. 41 (Gil. 16) (90 Am. Dec. 278), where a license fee of $200 a year for keeping a butcher's stall was held not be an abuse of legislative discretion, the supreme court of Minnesota said:

" The very object of a charter is to empower them (the council) to provide for the well-being of the city, by such regulations and ordinances as their daily observation of what is going on around them will qualify them to enact more judiciously than a body, constituted as a State legislature ordinarily is, could be expected to do."

In *City of Grand Rapids* v. *Braudy*, 105 Mich. 670 (64 N. W. 29, 32 L. R. A. 116, 55 Am. St. Rep. 472), the validity of an ordinance licensing and regulating pawnbrokers, junk dealers, and dealers in secondhand goods, was attacked on the ground that the license fee of $50 and a bond of $5,000 for pawnbrokers, and the fee of $25 and bond of $2,000 for junk and secondhand dealers, was so unreasonable that the ordinance should be declared void. This court, in an opinion by Justice GRANT, said:

" The charter expressly confers upon the common council the power to license and regulate pawnbrokers, junk dealers, and dealers in secondhand goods. Courts cannot interfere with legislative discretion, and are slow to declare ordinances invalid because unreasonable, when the power to legislate upon the subject has been conferred upon the common council. The council's discretion, and not the court's, must control. In such matters the city authorities are usually better judges than the courts "—citing many cases.

See also, *City of Grand Rapids* v. *Norman*, 110 Mich.

544 (68 N. W. 269); *People* v. *Blom*, 120 Mich. 45–48 (78 N. W. 1015).

We are of opinion that the council did not exceed its authority in passing this ordinance, and that we should not say that the license fees therein mentioned are unreasonable, excessive, or exorbitant.

This leads us to the conclusion that the order and judgment of the learned circuit judge denying the mandamus should be reversed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.