## Ex parte A. D. DAVIS.

No. A-10719.   Aug. 28, 1946.

(172 P. 2d 340.)

J. S. Montgomery, for petitioner.

A. O. Harrison, City Atty., of Bartlesville, for respondent.

BAREFOOT, J.  Petitioner, A. D. Davis, has filed in this court his petition for writ of habeas corpus, alleging that he is unlawfully deprived of his liberty by L. W. Turner, chief of police of the city of Bartlesville, and seeking his release from the city jail.

As a cause for his restraint, petitioner alleges that he is charged with a violation of a city ordinance of the city of Bartlesville, which is as follows:

"Ordinance No. 1348.

"An ordinance levying a license tax on photographers and/or photographer's agents, who solicit orders for photographs or sell coupons from house to house within the City, fixing the amount of said tax, providing penalties for the violation thereof, and declaring an emergency.

"Be it ordained by the Board of Commissioners of the City of Bartlesville, Oklahoma:

"Section 1.  There is hereby levied upon every photographer and/or photographer's agent, who solicits orders for photographs or sells coupons from house to house

within the city, a license tax of $2.50 per day or $15.00 per week or $30.00 per month, for each such agent.

"Section 2. No person shall solicit orders for photographs or sell coupons therefor within the city without first having obtained a license therefor. Application for said license shall be made in writing to the City Clerk, and state the name and business address of the applicant, stating whether a person, co-partnership or corporation, with the names of the principal officers, where a corporation, and the names of the members, where a co-partnership.

"Section 3. Any person violating the terms of this Ordinance by soliciting orders for photographs or the selling of coupons without a license therefor shall be guilty of a misdemeanor, and shall be punished, on conviction, of a fine not exceeding $20.00. Each day said photographer and/or photographer's agent shall so operate shall constitute a separate offense.

"Section 4. For the preservation of the public health, peace and safety, an emergency is hereby declared to exist, by reason whereof this ordinance shall be in full force and effect from and after its passage and approval, as required by law.

"Passed and approved this 2nd day of July, 1945."

It is contended by petitioner that said ordinance is illegal and unenforceable for the following reasons:

"1. Is violative of the Constitution of the State of Oklahoma, and particularly art. 2, section 2 thereof; art. 2, section 7 thereof; art. 2, section 32 thereof.

"2. Is violative of the Constitution of the United States of America and particularly art. 4, section 2 thereof, and the Fourteenth Amendment to the Constitution of the United States.

"3. The Ordinance is unreasonable, unjust and oppressive and is not an exercise of the proper police power of the City of Bartlesville, Oklahoma.

"The said Ordinance deprives the petitioner to his inherent right to the enjoyment of the gains of his own industry and it deprives the petitioner of liberty without due process of law and that the Ordinance creates a monopoly in favor of the citizens of Bartlesville, Oklahoma, to the exclusion of this plaintiff; it abridges the privileges and immunities of the plaintiff as a citizen of the United States and further it is discriminatory and makes a classification of the method of business and the location of business that is abhorent to both State and Federal Constitution."

Upon the filing of the above petition, a rule to show cause was issued, and a response filed by the Chief of Police of the city of Bartlesville. A certified copy of the ordinance above quoted is attached to the response as the basis for the detention of petitioner.

When the rule to show cause was heard in this court, petitioner introduced in evidence oral testimony, and other evidence. No evidence was offered by the respondent, but the contention is made that the evidence and record sustain the constitutionality and validity of the ordinance under the law.

Petitioner was 17 years of age. He was employed by O. E. Barrineau of the National Studios of Oklahoma City with a number of others to go into different cities in the state for the purpose of selling coupon orders for pictures. The plan for this operation as revealed by the record was for these salesmen to be taken by the manager to the city where they were to work that particular day. They then went from house to house with what was denominated "appointment blanks." They sold these in the

residence and business sections. They received $1 for each coupon, and this entitled the party purchasing the same to have an appointment at a later date with the photographer of the National Studios. At the time the picture was taken, an additional payment of $1 was made. The negative was sent to the National Studios in Oklahoma City, where it was developed and printed, and then delivered to the party holding the coupon. Petitioner and others soliciting the original orders received as their full compensation the $1 paid at the time of the original transaction. From this sum they paid their own personal expenses, including food and lodging.

The salesmanager of National Studios, C. F. Ray, testified fully as to the manner of the operation of the business, the training, instruction, and profits to be derived by the company and the compensation to be paid to the solicitors; and as to the license fee paid by the Studios in Bartlesville, and in other cities of Oklahoma and Kansas of comparable size to Bartlesville, and in that trade territory. He testified that in his opinion the payment of $2.50 per day for each of the six solicitors working in the city of Bartlesville was exorbitant, and that the company could not afford to pay that amount. That to do so would not only prevent the company from making a profit, but would show a loss.

The testimony of the petitioner, Mr. Davis, was that he sold an average of ten coupons per day at $1 each, and that an adult experienced salesman could sell an average of 17 coupons a day. Mr. Ray, the salesmanager of the company, testified that the average salesman could make $8 per day. It is presumed that by this testimony he meant that amount above his expenses. This would be less than petitioner Davis testified could be made by an

experienced adult solicitor. O. E. Barrineau, of the National Studios, testified that in his opinion a reasonable license fee to be paid by the company would be $5 per day for a crew of six.

There is no question here as to the validity of the ordinance in question, nor the right of the city council to pass the same.

In the recent case of Ex parte Davis, 72 Okla. Cr. 152, 114 P.2d 186, this court had an occasion to fully discuss an ordinance passed by the city of Edmond very similar to the one here involved, and as the same applied to a party who was selling photographic coupons, as in the instant case. It may be noted that the evidence in the Davis case, supra, revealed that petitioner's income from selling coupons was from $2.50 to $3 per day, and that the license fee was $5 per day. The ordinance involved in that case, as construed by the officers, did not apply to citizens of the city of Edmond who were operating a merchandise store in the city, but only to those who resided out of the city. These facts are not comparable to the instant case. The court, in the Davis case, supra, comes to the conclusion that the ordinance there in question was a revenue raising measure; and in keeping with the holding of the court in that case, the ordinance here involved is also a revenue raising measure, as distinguished from a regulatory ordinance.

The court in the Davis case, supra, pointed out that prior to amendment by the Legislature of 1935, S.L.1935, p. 136, § 1, Tit. 11 O.S.1941 § 651, municipal corporations had no legislative grant of power authorizing a tax on "photographers, photographers' agents, agents of all kinds and solicitors."

The general rule of law is that the burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to show its invalidity. This general rule is announced in 33 Am. Jur. 368, as follows:

"Sec. 46. If the Legislature has the legal right to impose a license tax the amount of the imposition is a matter within its discretion; and this discretionary authority may be conferred on administrative boards or officials or on municipal authorities. In this respect, therefore, it is the general rule that whether the license is required as a police regulation or as a revenue measure, the courts will not review the action of the lawmakers or licensing authorities unless an abuse of discretion is obvious, and persons attacking the validity of an enactment imposing license fees have the burden of proof to show that the fees are excessive for the purposes declared in the enactment. Under the power to regulate, the presumption is, unless the contrary appears, that the fee is reasonable; and this is almost the equivalent of saying that in the exercise of the power to regulate, a considerable latitude will be allowed for the exercise of legislative discretion over the subject, or for an approximation of the cost of regulation and supervision. Furthermore, the courts will not interfere with the legislative determination of the method by which the amount of a license tax is arrived at, so long as it is not unreasonably discriminatory; and the action of the state government in this matter is not the subject of judicial inquiry in a Federal tribunal."

And in 38 Am. Jur. 37:

"Sec. 348. In assessing a regulatory license fee or fixing the amount thereof, the municipal council or other legislative authority is accorded a wide discretion, which will not be interfered with unless its action is plainly unreasonable. Courts reluctantly interfere, and only where it is clear that there has been an abuse of discretion, where the lawmaking body of a municipality has exercised

its discretion as to the amount and reasonableness of a license fee, and will not declare such fee unreasonable unless it is manifestly and palpably so. A license fee charged by a city is prima facie reasonable; if the subject matter is within the power of the municipality to regulate the license regulation will be sustained unless its unreasonableness appears on the face of the ordinance or is established by extrinsic evidence, and the burden is upon one who challenges the ordinance imposing it to establish its unreasonableness and invalidity."

McQuillan, in his work on Municipal Corporations, says:

"Reasonableness of amount of license. Where the exaction is imposed under the power to regulate or in the exercise of the police power, as distinguished from the power to tax for revenue, as heretofore explained, the general rule obtains that the sum levied cannot be excessive nor more than reasonably necessary to cover the costs of granting the license and of exercising proper police regulation. The nature of the business sought to be controlled and the necessity and character of police regulations are the dominating elements in determining the reasonableness of the sum to be imposed. What would be fair and reasonable in one kind of business might well be considered unfair and unreasonable in another kind. This difference is fully recognized by the judicial decisions, and has been made the basis for close distinctions.

"The judicial view is that much should be left to the discretion of the municipal authorities. Where under undoubted character power, the tax is imposed for revenue alone, or for police regulation and revenue, the amount thereof is usually a matter for determination by the legislative branch of the municipal government. Ordinarily the courts will decline to interfere on the ground that the amount is oppressive or unreasonably large. They incline to defer to the judgment and discretion of the corporate authorities, and frequently presume that the

amount demanded is reasonable, particularly in the absence of evidence to the contrary.

"Ordinances imposing license taxes under the power to regulate are prima facie valid, and the unreasonableness of the exactions must be made clearly to appear, and they must be obviously and largely beyond what is needed for the purpose intended, before such legislation will be declared void. The fact that the exaction may result in producing a revenue in excess of that required for regulation, does not in itself destroy the regulatory character of a police measure."

Applying the law to the facts in the instant case, we have come to the conclusion that the burden required of petitioner in the instant case has not been met. The evidence of the petitioner reveals that he was making $10 per day and that the company paid his traveling expenses. That an adult experienced salesman could sell an average of 17 coupons in a day. The evidence of Mr. Ray, a sales manager of the company, was that an average salesman could make $8 per day. This proceeding is based upon the individual petitioner, and not upon the profit or loss to the company for which he is working. The evidence is not full and complete as to the number of solicitors it is necessary to work in each city or town where the business is carried on. Nor as to the number of days required to cover a city the size of Bartlesville. As above stated, the license fee provided by the ordinance is $2.50 per day for one individual, or $15 per week. It might be that by working fewer solicitors, and paying the weekly license fee provided by the ordinance, the company would show a profit.

We have examined many authorities and from such examination the amount charged under the ordinance in question does not seem unreasonable, and especially

to the extent of justifying our holding it invalid, under the evidence presented in this case. Note, 39 A.L.R. 1385; In re White, 43 Minn. 250, 45 N.W. 232; City of Duluth v. Krupp, 46 Minn. 435, 49 N.W. 235; O'Harra, City Attorney, v. Collier, J. P., 173 Mich. 611, 139 N.W. 870, Ann.Cas. 1914D, 936; City of Lebanon v. Zanditon, 75 Kan. 273, 89 P. 10; Higgins v. Lacroix, 119 Minn. 145, 137 N.W. 417, 41 L.R.A., N.S., 737; Wiggins Ferry Co. v. City of East St. Louis, 107 U.S. 365, 2 S.Ct. 257, 27 L.Ed. 419.

For the reasons above stated, the petition for habeas corpus is denied.

JONES, P. J., concurs. DOYLE, J., not participating.