# BOSSERT v. CITY OF OKMULGEE

No. A-11822.   July 22, 1953.

(260 P. 2d 429.)

Harland A. Carter, Okmulgee, and Joe Van Derveer, Chattanooga, Tenn., for plaintiff in error.

W. C. Alley, City Atty., and George R. Inglish, Okmulgee, for defendant in error.

POWELL, P. J. The plaintiff in error, Mary J. Bossert, who will hereinafter be referred to as defendant, was charged by complaint filed in the municipal court of Okmulgee with solicitation of orders for the sale of photographs in violation of city Ordinance No. 860; was found guilty and fined the sum of $19, and $1 cost. The defendant appealed to the county court of Okmulgee county, and her case was tried before the court without a jury on the 12th day of June, 1952, and she was again found guilty, and with the same fine being assessed as previously. Appeal has been perfected to this court.

Counsel for the city of Okmulgee have been in default for a brief since March 10, 1953. Apparently municipal counsel considered that the argument of appellant could not be answered, and we must consider the failure to file brief as a confession of error. Louis v. State, 92 Okla. Cr. 156, 222 P. 2d 160; Phillips v. State, 85 Okla. Cr. 81, 185 P. 2d 239; Bush v. State, 93 Okla. Cr. 188, 226 P. 2d 445; and see the rule where appellant fails to file brief. Braun v. Town of Delaware, 37 Okla. Cr. 334, 258 P. 284; also Tit. 20 O.S. 1951 § 47.

Nevertheless, even where a confession of error is formally entered, if the record discloses questions raised that in the public interest require treatment and a consideration of whether or not such confession is well taken, this court will carry out such duty. Lyons v. State, 6 Okla. Cr. 581, 120 P. 665; Bindrum v. State, 27 Okla. Cr. 372, 228 P. 168; Quick v. State, 75 Okla. Cr. 243, 130 P. 2d 102; State v. Green, 167 Wash. 266, 9 P 2d 62.

The charging part of the complaint reads:

"Then and there engage in the solicitation for orders for photographs, works of art, and in offering for sale and selling coupons for photographs, and works of art upon the public streets, sidewalks and from house to house within the corporate limits of the city of Okmulgee, Oklahoma, without a license in violation of the provisions of Ordinance No. 860 of the ordinances of said City, and contrary to the form of said ordinance in such case made and provided."

Sections 1, 2, 3 and 4 of Ordinance No. 860, read:

"Section 1. From and after the passage and approval of this Ordinance, it shall be unlawful for any person either as principal or agent to solicit orders for photographs, works of art, the sale of coupons for photographs or works of art, or to solicit subscriptions for magazines upon any of the public streets, side-walks or from house to house within the corporate limits of the city of Okmulgee, Oklahoma, without first having obtained a license therefor as hereinafter provided.

"Section 2. There is hereby levied upon each and every person, either as principal or agent, who engages in the sale of photographs, works of art, or sells coupons for photographs or works of art, or solicits subscriptions for magazines upon the public streets, sidewalks or from house to house within the corporate limits of said City, a license fee of Three ($3.00) Dollars per day, of Fifteen ($15.00) Dollars per week, or Thirty ($30.00) Dollars per month.

"Section 3. Application for the license herein provided for shall be made in writing to the Commissioner of Finance, Ex-officio City Clerk of said

City, stating the name and business address of the applicant, stating whether a person, co-partnership or corporation with the names of the principal officers where a corporation, and the names of the members where a co-partnership.

"Section 4. Any person convicted for the violation of any of the provisions of this Ordinance shall be punished by a fine in any sum not to exceed Twenty ($20.00) Dollars and costs. Each day or part of a day solicitation is continued in violation of this Ordinance shall constitute a separate and distinct offense for which said violator shall be subject to a fine as provided herein."

For reversal counsel for defendant advance five propositions, all challenging the constitutionality of Ordinance No. 860. The case is actually argued under three propositions, as follows:

"2. For the reason that the evidence shows the arrest and conviction of Mary J. Bossert, under the provisions of Ordinance Number 860, of the City of Okmulgee, is an unreasonable exercise of the police power of the city of Okmulgee, Oklahoma, and, void under both State and Federal Constitutions, since said Ordinance Number 860 bears no reasonable relation to the health, safety, morals, welfare, comfort or convenience of the public.

"3. That said Ordinance Number 860 of the City of Okmulgee, Oklahoma, under which this plaintiff in error was charged, tried and convicted, violates the constitutional and common rights of said plaintiff in error, to engage in and carry on a business, not in itself hurtful and not pursued in any manner harmful to the public.

"4. That the constitutional rights of plaintiff in error were further violated, in that the business in which she was engaged at the time of her arrest, showed that she was an employee of Olan Mills, Inc., of Chattanooga, Tennessee, and in violation of her right, and the rights of her employer, to engage in interstate commerce."

The evidence discloses that the defendant, Mary J. Bossert, was a member of a crew of solicitors working out of Dallas, Texas, for Olan Mills, Inc., of Chattanooga, Tennessee. A. H. Bean, vice-president in charge of the Dallas office, so testified. The firm was incorporated under the laws of Tennessee. Witness stated that under their plan, Miss Bossert, working under a group manager, would solicit orders for photographs and "upon a successful solicitation she would supply the customer with orders and the place to which the customer should appear to have negative made. The order gives the customer's name and mailing address, the subject to be photographed and the phone number. At that time she collected fifty cents and an additional fifty cents was to be paid at the time the delivery was made."

Witness further stated that a copy of the order and film would be sent by U. S. Mail to Dallas, Texas, where the film was developed and the proofs then returned to customer by U. S. mail. For the $1.00 paid the customer would get one 8 x 10 picture. It may be inferred from the record that the sitting for the picture took place in Okmulgee, but it was specifically shown that the development of the film and printing of the picture took place in Dallas, Texas.

Mary J. Bossert did not obtain a license from the city of Okmulgee to solicit orders.

The ordinance in question was apparently adopted by the city of Okmulgee under its police power as provided by Tit. 11 O.S. 1951 § 651. The occupation and license tax provided for under the legislative grant may properly be imposed by a municipality where not unreasonable in amount, and in an excess of an amount that is reasonably necessary for regulating the business involved. Mitchell v. City of Lawton, 124 Okla. 60, 253 P. 999; Ex parte Holt, 74 Okla. 226, 178 P. 260; City of Muskogee v. Wilkins, 73 Okla. 192, 175 P. 497; Ex parte Robert Davis, 72 Okla. Cr. 152, 114 P. 2d 816.

The ordinance contains no provision for supervision of persons soliciting orders for photographs. It is contended that by Section 3 of the ordinance the loophole was provided for discrimination between local photographers and out-of-town photographers, and that the fee exceeded the amount of necessary or probable expenses of issuing license and for necessary supervision, and that the ordinance amounted to a revenue raising measure.

There is no evidence in the record to show what license fee resident photographers were required to pay, if any, or to show that there was actual discrimination other than might be inferred from the record.

In Ex parte A. D. Davis, 82 Okla. Cr. 444, 172 P. 2d 340, 341, this court said, paragraphs 3 and 4 of the syllabus:

"One attacking the validity of an ordinance imposing license fees has the burden of proof to show that the fees are excessive for the purposes declared in the enactment,

"A license fee charged by a city is prima facie reasonable; if the subject matter is within the power of the municipality to regulate the license regulation will be sustained unless its unreasonableness appears on the face of the ordinance or is established by extrinsic evidence, and the burden is upon one who challenges the ordinance imposing it to establish its unreasonableness and invalidity."

In Ex parte Robert Davis, supra, Judge Jones of this court cited with approval the case of Mitchell v. City of Lawton, supra. There the Supreme Court of Oklahoma said:

"Where such police regulation requires a license to do certain things, and the license fee prescribed is in excess of the expense of issuing the license and regulating the business or carrying into effect the regulation, such regulatory provision is unauthorized, illegal, and void."

This principle of law was affirmed by the Supreme Court of Oklahoma in 1949 in the case of City of Shawnee v. Reid Bros. Plumbing Co., 201 Okla. 592, 207 P. 2d 779.

There is no evidence in the record to show the expense of issuing solicitor's license, and the expense of supervision, if any.

In Ex parte Robert Davis, supra, the ordinance stated in the heading that it was a revenue raising measure. And on trial evidence was introduced to show that the tax was not assessed against local photographers and it was also shown that Davis's income from selling coupons for photographs was only $2.50 to $3.50 per day, which of course would barely pay for his meals. The license fee exceeded the income. There is no evidence in the within case to show whether the tax of $3 per day was reasonable in relation to the average income of a solicitor.

In Ex parte A. D. Davis, supra, the city of Bartlesville had an ordinance practically identical with the Okmulgee ordinance here involved, except the fee was $2.50 per day, $15 per week, or $30 per month for each agent. The petitioner in that case was found to make $10 per day above his traveling expenses, and it was held that the license fee of $2.50 per day under such facts, was not unreasonable.

It is apparent that the defendant in the within case failed to meet the burden imposed of showing that there existed this connection between fees charged local photographers and out-of-town photographers, or that the fee charged was excessive in relation to the net income of the solicitor, or that the license fee prescribed was in excess of the expense of issuing the license and regulating the business of carrying into effect the regulation and was therefore actually a

revenue raising measure. The ordinance may actually have violated these principles, but as to intrastate transactions our rule places a greater burden on the one attacking the ordinance than is the case under the next proposition.[1]

This brings us to the consideration of a proposition not treated by the court in the two Davis cases, where in the first case it does not appear where the photographs were developed, and in the second case it appears that the picture films were developed within the State of Oklahoma and the prints were made therein.

Defendant contends that her constitutional rights were violated, in that the business in which she was engaged at the time of her arrest showed that she was an employee of Olan Mills, Inc., of Chattanooga, Tennessee, and her arrest was in violation of her right, and the rights of her employer, to engage in interstate commerce, in contravention of the commerce clause, Art. I, § 8, cl. 3 of the Constitution of the United States.

The problem of the violation of the interstate commerce clause of the United States Constitution was not involved in either of the Davis cases, supra.

We find that the question has many times had the attention of the Supreme Court of the United States, and the decisions of the court must govern here. The principles stated in the two Davis cases, supra, would govern intrastate commerce as distinguished from interstate.[2]

The case of Nippert y. City of Richmond, 327 U.S. 416, 66 S. Ct. 586, 90 L. Ed. 760, 162 A.L.R. 844, decided in 1946, was a case where the facts were much as in this case. It is replete with footnotes and reviews a long line of cases by that court on the subject, and may be referred to as well as the note on the question following the case as reported in 162 A.L.R. 844.

The Supreme Court of Arkansas previous hereto in the case of Nicholson v. Forrest City, 216 Ark. 808, 228 S.W. 2d 53, 54, has had occasion to consider the applicability of the principles of law announced in the Nippert case as applied to an ordinance of Forrest City that levied certain "Annual privilege license' as follows:

"Photographers: $11.00 per year.

"Photograph salesmen which means each person engaged in selling photographs, photograph coupons or certificates or any other medium of exchange for photographs: $25.00 per year.

"All other persons engaged in soliciting the sale of additional photographs, known as 'Proof Passes': $15.00 per year."

The defendant in the Forrest City case was also as here employed by Olan Mills, Inc., and under the same plan of operation, except the films were developed and prints made in Chattanooga, Tennessee.

There the court said:

---

[1] See dissenting opinion by Mr. Justice Douglas in the Nippert case hereinafter cited, in which he would require one attacking the validity of an ordinance to produce a greater degree of proof than was required in the Nippert case involving interstate commerce.

[2] As stated by Justice Rutledge for the court in Nippert v. City of Richmond, 327 U.S. 416, 66 S. Ct. 586, 595, 90 L. Ed. 760, 162 A.L.R. 844, 855, "It may be, as the Court said in the Berwind-White [Coal Min. Co.] case [McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A.L.R. 876], that the state is free to allow its municipal subdivisions to erect such barriers against each other, to some extent, as to the commerce over which the state has exclusive control. It cannot so outlaw or burden the commerce of the United States.

"The drummer is a figure representative of a by-gone day. But his modern prototype persists under more euphonious appellations. So endure the basic reasons which brought about his protection from the kind of local favoritism the facts of this case typify."

"It is agreed that 'not all burdens upon interstate commerce, but only undue or discriminatory ones, are forbidden' by this clause, but defendants contend that the ordinance as applied to them does impose undue and discriminatory burdens upon the processes of interstate commerce.

"The case of Nippert v. City of Richmond, 327 U.S. 416, 66 S. Ct. 586, 90 L. Ed. 760, 162 A.L.R. 844, decided by the United States Supreme Court in 1946, appears to be controlling here. That case held invalid a $50 annual license tax levied by ordinance of the City of Richmond, Va., on the privilege of engaging in business as a solicitor, as applied to a person soliciting orders for women's dresses to be shipped to local buyers by an out-of-state seller. The defendant had without paying the license tax solicited orders in Richmond for five days for a $2.98 garment and had transmitted orders thus taken to a Washington, D. C., manufacturer who filled the orders by mail. A conviction for violation of the Richmond ordinance was reversed and set aside.

"In the Nippert case, as in the present cases, the ordinance made no distinction between out-of-state solicitors, or solicitors for out-of-state sellers, and local solicitors for domestic sellers. On its face the ordinance and the tax operated equally upon solicitors for interstate sales and solicitors for intrastate sales. It levied a $50 annual tax on each. The city of Richmond took the view that the ordinance was non-discriminatory as between interstate and intrastate commerce, therefore imposed no improper burden on interstate commerce, and came within the rule that interstate commerce may be made to 'pay its way' in the local tax field. McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A.L.R. 876. The Supreme Court pointed out, however, that the tax sustained in the Berwind-White case was a sales tax on sales completed in New York, levied on a percentage basis, therefore burdening each interstate sale thus completed just as much as a corresponding local sale was burdened, and no more. Not only was the tax non-discriminatory on its face; it was also non-discriminatory in its practical effect as well. Contrariwise, the Richmond tax, superficially the same on all solicitation whether for interstate or intrastate sales, in average practice imposed much the heavier burden on salesmen for extrastate sellers. 'So far as appears a single act of unlicensed solicitation would bring the sanction into play. The tax thus inherently bore no relation to the volume of business done or of returns from it.' 327 U.S. at page 427, 66 S. Ct. at page 591. If such a tax might be levied by one town, it might be levied by ten towns, or twenty, or all the towns in a state, or all the towns in all the states to which a seller's commerce might extend. 'A day here, a day there, five days now and five days * * * several months later, with a flat license tax annually imposed (in each town) lacking any proportion to the number or length of visits or the volume of the business or return can only mean the stoppage of a large amount of commerce which would be carried on either in the absence of the tax or under the incidence of one taking account of these variations. * * * Not the tax in a vacuum of words but its practical consequences for the doing of interstate commerce in applications to concrete facts are our concern.' 327 U. S. at pages 430, 431, 66 S. Ct. at page 593. The possibility that a solicitor of interstate sales might stay in one town for many months, or for the whole year, and thus actually be not burdened more by the tax than would a local full-time salesman, was deemed not enough to validate the ordinance; the known nature of much interstate selling by itinerant solicitors negatives such permanence in location, and the enactment was not to be saved by the mere possibility of exceptional non-discriminatory cases under it.[1] The established local solicitor of intrastate business whose normal situation enables him to work in one community for an entire year with only a single privilege tax payment is by the enactment given a tremendous tax advantage over the average itinerant in his less localized solicitations for interstate business."

[1] "The decision in the Nippert case was essentially a reaffirmation of a long line of decisions, the so-called 'drummer cases', holding similar state and municipal enactments to be void under the commerce clause. The first of this line of cases was Robbins v. Shelby County Taxing District, 120 U.S. 489, 7 S. Ct. 592, 30 L. Ed. 694, and it was followed often, as in Crenshaw v. State of Arkansas, 227 U.S. 389, 33 S. Ct. 294, 57 L. Ed. 565; Rogers v. [State of] Arkansas, 227 U.S. 401, 33 S. Ct. 298, 57 L. Ed. 569; and Real Silk Hosiery Mills v. City of Portland, 268 U.S. 325, 45 S. Ct. 525, 69 L. Ed. 982. Citations are collected in McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 56, at note 11, 60 S. Ct. 388, 84 L. Ed. 565, 128 A.L.R. 876."

In the within case a single act of solicitation made the defendant subject to the payment of a fee of $3 whether an order was obtained or not, and $3 each day thereafter that a single solicitation might be made. The evidence does not show how much of the total of $1 to be paid for an 8 x 10 picture the solicitor was permitted to retain, but it did show that she collected only fifty cents on signing an order, and the remaining fifty cents would be paid on receipt of the picture. It is at once apparent that the tax was without question disproportionate with the probable returns. No provision is made in the ordinance for a tax on a firm maintaining a local studio and soliciting by 'phone, mail, by newspapers or radio. It is clearly discriminatory as to the "drummer" or itinerant traveller, or man of small capital.

Many corporations that do not maintain places of business within Oklahoma but who ship goods to the retail trade within Oklahoma, now collect the two per cent sales tax on such goods under the provisions of Tit. 68 O.S. 1951 §§ 1310h and 1310i. And as suggested by the Supreme Court of the United States in the Nippert case, citing as an example the case of McGoldrick v. Berwind-White Coal Mining Co., supra, the tendency now is to recognize that interstate commerce may be made to "pay its way" in the local tax field. But the tax, where it involves interstate commerce, must not only be non-discriminatory on its face, but it must be non-discriminatory in its practical effect as well. Such is the holding in the Nippert case, supra.

Any attorney with any experience with municipal bodies throughout the state, without doubt has discovered the pressure such bodies are subjected to by some local businesses to stifle or prevent outside competition in particular lines of business. Sometimes ingenious and unique ordinances with devious provisions are suggested to keep out "outside" dairy products, bread trucks and solicitors for other competitive goods or products from adjoining towns or states. All such programs are so planned that by indirection or subterfuge the results sought can be obtained without the restrictions or penalties in practical operation affecting such local sponsors, or rendering such particular ordinance unconstitutional.

The problem of municipal bodies under police power, is regulation in the interest of public health, morals and safety, or if for revenue, as seemingly the tendency is, from statements quoted, to now permit, that the amount of tax shall not be so burdensome as to stifle commerce; if under the police power, that the amount is not out of proportion to the cost of supervision; and overall, that any fee or tax must apply uniformly on the local resident to the same extent as on the non-resident, no more, no less.

This is not a new problem. It is age-old between sovereign nations; that is, whether free trade should prevail, or should there be moderate tariffs or tariffs having the effect of stifling commerce,—except on a one-way basis. There has always been one group that would want to restrict one commodity but insist on no restrictions on another. No doubt the evils arising from the problem have played an important part in contributing to the economic ills of the world, or without debate, has engendered tensions, as even now plague our nation.

All the states in recognition of the problem, and in the avowed interest of the general welfare rather than that of a private group, have enacted in their Constitutions provisions aimed at promoting the free flow of commerce as between the states and the communities within the respective states in line with the letter and spirit of the federal constitutional provisions.

A close study of the ordinances involved in the many cases cited in the note following the cases reported in A.L.R., already referred to, and named in the

leading cases cited from the Supreme Court of the United States, discloses many shades of difference. In fact, in the Nippert case, supra, different from the within case, there was but one fee—a yearly one of $50, and one-half of one per cent of gross earnings, receipts, fees or commissions for the preceding license year in excess of $1,000.00, whereas in the within case one could solicit on a daily basis for $3, or $15 per week, or $30 per month. There was no yearly fee, but by the monthly rate it would by calculation amount to $360. But in the Nippert case, and many of the other cases, as here, the ground supporting the requirement for a license fee, was simply the local incident of solicitation. So it is evident that if one did not make a solicitation of an order by presence, no license would be required. But that would not prevent the obtaining of business, providing the person had the financial means of becoming self-employed. He could then have a local situs for a studio and solicit through the local newspapers, and by hand bills, the telephone, radio, television, etc. But lacking finances, the transient solicitor's methods of obtaining orders being by personal solicitation, he would come within the terms of the ordinance, and the amount of the license fee would have to be reckoned with, and the net result would be his elimination from the competitive field. And these facts, in line with the reasoning of the majority opinion in the Nippert case, on the face without more, pictured the ordinance for what it actually amounted to under such reasoning, an unreasonable restraint on interstate commerce. And while by all logic, this should condemn the ordinance as violative of the provisions of our State Constitution as to intrastate commerce, by fact of the previous holdings of this court in the two Davis cases, supra, some further proof above than present herein would be required by the person attacking the validity of such ordinances, where intrastate commerce alone was involved, as first herein set forth.

Ordinance No. 860 of the city of Okmulgee is held to be in practical effect in contravention of Art. I, § 8, cl. 3 of the Constitution of the United States, and void in so far as applicable to persons soliciting business in interstate commerce.

The case is therefore reversed and remanded, with directions to dismiss.

JONES and BRETT, JJ., concur.